## No. 5212.

### SABINE & EAST TEXAS RAILWAY COMPANY v. R. L. WOOD.

1. NEGLIGENCE.—The road bed of a railway company was so constructed as, that by the damming up of water against it during a storm, the house of the plaintiff, with the personal property it contained, was destroyed. In a suit for damages against the company the jury was instructed that it was the duty of the company to use that degree of care and prudence in so constructing its road bed so as to provide against damage to such adjacent property as a prudent, careful and cautious man would to protect himself against damage to his own property. *Held*, that there was no error.

2. SAME—CHARGE OF COURT.—A charge was also given to the effect that the defendant company "would not be liable for damages arising from an extraordinary or unusual rise or overflow of water, such as could not be foreseen or anticipated by the use of the greatest care, skill and caution .in the construction of its road bed." *Held*, that the defendant having failed to ask a charge to the effect that a less degree of care would have relieved it from liability, there was no error.

3. NEW TRIAL.—The discovery of new testimony, cumulative in its character will not authorize a new trial.

APPEAL from Jefferson. Tried below before the Hon. W. H. Ford.

*O'Brien & John,* for appellant, cited Houston & Great Northern Railroad Company v. Parker, 50 Texas, 330; Gulf, Colorado & Santa Fe Railway Company v. Holliday, 65 Texas, 513; Gulf, Colorado & Santa Fe Railway Company v. Pomeroy, 67 Texas, 498.

*R. L. Wood,* for himself, on the charge of the court, cited Mitchell v. Zimmerman, 4 Texas, 75; Norvell v. Oury, 13 Texas, 31; International & Great Northern Railroad Company v. Underwood, 64 Texas, 463; Queen Insurance Company v. Jefferson Ice Company, 64 Texas, 578; International & .Great Northern Railroad Company v. Leak, 64 Texas, 659; Galveston, Harrisburg & San Antonio Railway Company v. Delahunty, 53 Texas, 206; McLane v. Rogers, 42 Texas, 220; Mercer v. Hall, 2 Texas, 284; Hardy v. DeLeon, 5 Texas, 211; Id., 318; Hollingsworth v. Holshousen, 17 Texas, 41; Berry v. Donley, 26 Texas, 737; Rail-

way Company v. Hardy, 61 Texas, 230; James v. Thompson, 14 Texas, 463.

STAYTON, ASSOCIATE JUSTICE. This action was brought by the appellee to recover damages for the loss and destruction of personal property owned by him and for injury done to his person, all of which he alleged resulted from the failure of the appellant properly to construct its railway near the town of Sabine Pass. The defendant alleged that its road bed was properly constructed, and that the injuries resulted from water driven upon the land by an unusually severe storm "which the greatest care and skill in the construction of its road grade could not have prepared against."

The evidence shows that Sabine Pass is situated on the west side of Sabine lake and pass, and that the land there and for a considerable distance above, is elevated only about two feet above the sea level. The land back is perhaps lower, and for many miles into the interior the country presents this low, flat surface, over which at times of high wind from the east and southeast, water from the lake, pass, and gulf, spread. The appellant constructed its road bed some one thousand two hundred, or one thousand five hundred feet west of the west bank of the pass, but at the town of Sabine Pass it approached nearer to the shore. Its road bed, which consisted of an embankment of earth, was four or five feet high, and between this and the lake or pass, a part of the town of Sabine Pass was situated.

The appellant was living in a house in that part of the town which was destroyed by high water that came in during a high wind on June 14, 1886, and thus was his property destroyed and personal injury received by himself.

The evidence tends to show that, prior to the construction of the railway, water frequently came over the land, but that it would flow into the back country, and not become deep, but that upon this occasion its flow was impeded by the railway embankment to such extent that between the railway and the shore the water became four or five feet deep, while there was but little water on the west side of the railway. The great weight of testimony tends to show that such winds and overflows had frequently occurred before the railway was built, but without injury to property; and there is some testimony tending to show that the company's engineer was informed that the

embankment, if constructed solidly to such height, would bring about such results as ensued.

The evidence renders it reasonably certain that the destruction of the house in which plaintiff's property was, as well as its loss and his injury, resulted from the accumulation and deepening of the water, caused by the railway embankment, and that but for it the loss would not have occurred. The court instructed the jury that it was the duty of the railway company, in the construction of its road bed "to use that degree of care and prudence in so constructing its road bed so as to provide against damages to such adjacent property as a prudent, cautious and careful man would do to protect himself against damages to his own property." This charge was as favorable as the appellant could ask.

The court, however, instructed the jury that if the appellant "constructed its road bed or grade in such a way and in such manner as to guard against ordinary freshets, overflows, tides, etc., so as to prevent damage therefrom to adjacent property, it would not be liable for damages arising from an extraordinary or unusual rise or overflow of water, such as could not have been foreseen or anticipated by the use of the greatest care, skill and caution in the construction of its road bed." It is urged that the giving of this charge was error. The charge certainly stated a correct rule, and if the appellant was of the opinion that the exercise of a less degree of care would have relieved it from liability, a charge upon that subject should have been asked. If the charge had informed the jury that nothing less than the exercise of the highest skill, care and caution would relieve the appellant from liability for an injury resulting from an extraordinary or unusual rise or overflow, a different question would arise. There is no reason to believe that the jury were misled if they considered the entire charge.

It is claimed that the verdict of the jury was contrary to and not supported by the evidence, in that it is claimed that the evidence clearly showed that the injury resulted from an extraordinary, sudden and violent storm which could not have been anticipated. The evidence is not of this character; to the contrary, it tends strongly to show that such storms had frequently occurred before, and that but for the want of proper care in the construction of the appellant's railway, injury most probably would not have resulted from such a storm.

There was an application for a new trial based on testimony

alleged to be newly discovered, which was overruled, and this is assigned as error. This evidence, as stated in the affidavit of the witness, was "That he had lived at Sabine Pass from 1860 until 1869. * * * That in 1865, before the Sabine and East Texas road was built, there was a storm, when the water and wind together carried away houses located on the front of Sabine Pass, between the water of the Pass and where the road bed of defendant is now located. That he is acquainted with the situation and bearing of the Pass, and that a wind blowing from the southeast would blow directly up the Pass, and that houses on the front of the Pass would be in a very exposed situation, and that the force of the wind and wave would not be affected, when the wind is blowing from the southeast, by the railroad embankment of defendant; that he left Sabine Pass in 1869, and his residence on the front of the Pass, on account of the exposed condition of said front." We do not see what advantage this evidence could have been to the defendant; in so far as admissible it was cumulative; and the court would have been well justified in coming to the conclusion that such facts as the witness proposed to testify were known, if true, by the residents of the town generally, and that the exercise of a slight degree of diligence would have obtained evidence of such facts. It is not shown what diligence was used to obtain the testimony of the witness.

There is no error in the judgment and it will be affirmed.

*Affirmed.*

Opinion delivered February 7, 1888.