Gulf, Colorado & Santa Fe Railway Company v.
Isabella Hill et al.

No. 1118. Decided June 23, 1902.

**1.—Charge—Separate Defenses Submitted Conjunctively.**

A charge requiring a verdict for defendant if the evidence establishes certain facts, is not affirmative error as to him though it groups conjunctively facts establishing distinct defenses and requires a finding in his favor only on the establishment of all such facts; the defect is one of omission, which should be corrected by a request for instructions submitting the defenses disjunctively, where nothing appears to indicate that the jury were misled by it. (Pp. 636, 638.)

**2.—Same—Cases Discussed.**

Railway v. Wood, 69 Texas, 679, and Railway v. Brown, 78 Texas, 402, approved and followed; Railway v. Conroy, 83 Texas, 216, questioned. (P. 638.)

**3.—Master and Servant—Assumed Risk—Custom of Doing Work—Reasonableness—Notice to Servant.**

The servant does not assume risks arising from the customary method of the master in doing the work unless the custom is a reasonable one and the servant had or was chargeable with notice of it. (Pp. 637, 638.)

**4.—Same—Charge—Burden of Proof.** . ' '

See charge on assumption by servant of the risks arising from the master's customary manner of working, held erroneous because ignoring the questions of reasonableness of the custom, and of the servant's knowledge of its existence, and placing the burden on plaintiff to show that the injury was not from a risk so assumed. (Pp. 637, 638.)

**5.—Contributory Negligence—Burden of Proof—Charge.**

Where plaintiffs' evidence made it necessary that they should explain the conduct of the servant, to exculpate him from the charge of contributory negligence, it was error to charge that the burden of proof was upon the master to establish that defense, such charge being calculated to lead the jury to believe that they should consider, alone, the evidence offered by the defendant upon that issue. (Pp. 637, 638.)

Questions certified from the Court of Civil Appeals for the First District, on writ of error from Harris County.

. *J. W. Terry* and *Cowan, Burney & Lee,* for plaintiff in error.—Under the charge of the court, in order to justify the giving of the kick signal, and to excuse the railroad company from liability on account thereof, the jury were required to find: (a) That such was the usual and ordinary method of doing the work in the Galveston yards; (b) that Hill knew when he went to make such uncoupling that the signal would be given, either of which facts would have entitled the defendant to a verdict. Railway v. Conroy, 83 Texas, 216. ' . :

The special charge No. 7 is certainly not more favorable to the defendant than the law and the facts warranted. There is no evidence that Hill ever worked in any other yard; there is no evidence that he was not entirely familiar with doing the work in the Galveston yards, but every suggestion made by the testimony is that he was. All the testimony shows that what was done at this time was something that had to be done every day, and every hour of the day, and there is no ground for the supposition that Hill did not know of the customary way of doing it in the Galveston yards, if any. Therefore, if there was a customary way of doing it in Galveston, and that method was different from the method in vogue in other yards, it was wholly immaterial in this case what the method was in the other yards, and the defendant was entitled to have the jury so instructed.

' So much of the charge as told the jury that the burden of proof was unqualifiedly on the defendant on the issue of contributory negligence was, under the facts of this case, erroneous. The burden was on the plaintiffs to show the facts surrounding and leading to the accident, how the accident occurred, and the relation of the injured party to it, and in · so doing, if the injured party is shown prima facie to have been negligent, the burden as to contributory negligence is on the plaintiff. In developing plaintiff's own case, they showed Hill, in pursuance of a pre-arranged plan to have gotten down off the car, gone up to make an uncoupling without any necessity for exposing himself whatever, on good track, in broad daylight, and to have in some way gotten under the

cars—in what way is unexplained—when their own testimony shows no violent or unusual handling of the train; with the case so developed, it was not proper to charge the jury that the burden of proof was on the defendant on the issue of contributory negligence. Railway v. Sheider, 88 Texas, 152; Murray v. Railway, 73 Texas, 2; Railway v. Crowder, 63 Texas, 503; Railway v. Murphy, 46 Texas, 363; Railway v. Spicker, 61 Texas, 427.

In Railway v. Martin, 63 Southwestern Reporter, 1090. Railway v. Lewis, 63 Southwestern Reporter, 1091, and Railway v. Hill, following Railway v. Reed, 88 Texas, 447, it is held that where the plaintiff's evidence raises the issue of contributory negligence, it is erroneous, because misleading, to charge that the burden of proof is on defendant. In none of these cases was a special charge asked.

*Lovejoy & Malevinsky,* for defendants in error.—The trial court did not err in submitting to the jury the instruction set forth in the eleventh assignment of error. The instruction, as far as it extended, was an accurate and correct statement of law. If any criticism can be leveled at the instruction whatsoever, it can only go to the extent of suggesting a nondirection, and not a misdirection.

In the absence of a special request to charge more specifically and definitely upon any phase of defendant's case, the appellate courts, by universal rule, refuse to reverse on account of a mere nondirection. 11 Enc. of Pl. and Prac., 2167,—on pages 222 and 223 the court will find cited at least 100 Texas cases authoritatively deciding the point as contended; Railway v. Brown, 78 Texas, 402; Railway v. Wood, 69 Texas, 679; Railway v. Eberhardt, 43 S. W. Rep., 510.

If, however, your honorable court should determine that the instruction embodied in the eleventh assignment of error presented an affirmative error, we respectfully submit that it is nonavailing to the railway company, by virtue of the special instruction submitted to the jury by the trial court at the instance of the plaintiffs, and which is contained in the second question propounded.

The trial court did not err in refusing to submit to the jury the special charge requested by the railway company and set forth in the third question propounded by the honorable Court of Civil Appeals.

A special charge will not be given by the trial court where it embodies an erroneous statement of law. 11 Enc. of Pl. and Prac., 234 et seq.

The special charge requested was erroneous in that it instructed the jury to ignore the custom of signaling generally, if a different custom obtained at Galveston. This the court would have had no right to do, because evidence of custom of signaling generally was admissible upon the question of negligence vel non. The instruction that the railway company had a right to ask, and which if requested the trial court would in all probability have given, was as follows: "If the jury believed from the evidence that the method of signaling at Galveston in switching work was negligent (and upon this question the jury had the right to consider

;the methods employed in signaling generally outside of Galveston), yet you, the jury, are nevertheless instructed that if you believe it was the custom at Galveston to pursue this negligent method of signaling, and the deceased Hill knew of the custom, then your verdict should be for the defendant. Railway v. Briggs, 23 S. W. Rep., 503, 504; Railway v. Pitts, 42 S. W. Rep., 258, 259; Gillett on Ind. and Col. Ev., sec. 128, p. 180, et seq.; Flanders v. Railway, 53 N. W. Rep., 544; Railway v. Harris, 67 S. W. Rep., 315; Rope and Twine Co. v. Burkett, 21 S. W. Rep., 958; Railway v. Johnson, 38 S. W. Rep., 522; Bailey on Mast. and Servt., secs. 916-935; Railway v. Tracy, 66 Fed. Rep., 931.

The special charge requested was incorrect and erroneous, in that it placed the burden of proof upon the defendants in error to show that the signals alleged to have been given at the time of Hill's death were not the customary signals, when, as a matter of law, the burden of proof was on the railway company to establish that the signals were the customary signals.

The trial court did not err in charging the jury in this case that the burden of proof was on the railway company to show that the deceased Hill was guilty of contributory negligence. Railway v. Sheider, 88 Texas, 162; Railway v. Scarborough, 4 Texas Ct. Rep., 907; Railway v. Gordon, 54 S. W. Rep., 635; Dalwigh v. Railway, 42 S. W. Rep., 1009; Railway v. Lyons, 53 S. W. Rep., 96; City of Hillsboro v. Jackson, 44 S. W. Rep., 1011; Railway v. O'Neal, 45 S. W. Rep., 922; Railway v. Belt, 46 S. W. Rep., 375; 1 Thomp. New Com. on Law of Neg., sec. 419, p. 404.

The concrete and generic question before the court is as follows: If a switchman enters between moving cars to couple or uncouple them, when the rate of speed is from two to three miles per hour (this being the maximum amount testified to by any of the witnesses), before the kick signal was given, is the party injured guilty of negligence as a matter of law, or do such facts raise a presumption of negligence against him? Railway v. Slinkard, 39 S. W. Rep., 962; Railway v. Gordon, 54 S. W. Rep., 635; Ashman v. Railway, 51 N. W. Rep., 648; Hanna v. Railway, 154 Mass., 529; Beems v. Railway, 12 N. W. Rep., 222; Railway v. Graham, 10 So. Rep., 284; Baird v. Railway, 8 Am. and Eng. R. R. Cases, 128; Railway v. Nickels, 50 Fed. Rep., 718; Railway v. Turner, 43 S. W. Rep., 561.

BROWN, Associate Justice.—The Court of Civil Appeals of the First Supreme Judicial District has certified to this court the following statement and questions:

"This suit, which is now pending before us on motion for rehearing, was brought by Isabella Hill, for herself and as next friend of her two minor children, to recover of the defendant damages for the alleged negligent killing of her husband, J. H. Hill. Judgment was for plaintiff in the court below, and the defendant railway company brought the cause here by writ of error.

"We set out fully the facts found by us from the record, because such

a statement is necessary to a comprehension of the questions hereinafter propounded in their relation to the entire case.

"Plaintiffs allege as a basis for recovery that the deceased was a switchman in the employ of defendant, and was, at the date of the accident which caused his death, engaged, with other members of a switching crew, in doing some switching in the yards at Galveston. That it was the purpose of those thus engaged to kick the end car of a string of cars they were handling into a side track without following it in with the rest of the train. That in order to do this, the train, as it backed in the direction of the switch, was to be slowed down to a slow rate of speed, whereupon it became the duty of deceased to uncouple the end car. That in doing so, it was proper for no one to give the kick signal except deceased. That he undertook to uncouple the cars, and while doing so his fellow switchman, without warning him, negligently gave the kick signal, in response to which the speed of the train was suddenly and violently increased, whereby he was knocked down, run over by the cars and killed. That the signal which caused his death was given by one Fewell, and that his coemployes were negligent in taking the signal from Fewell, but should have waited until the deceased had signaled that the cut had been safely made.

"In addition to the general denial, the defendant pleaded specially that deceased's injuries and death resulted from one of the risks ordinarily incident to his employment; pleaded his contract of employment, in which he acknowledged himself familiar with defendant's rules; agreed to look to his coemployes for all necessary information looking to his safety; agreed that in every case of doubt he would take the safest course; that he would avoid taking risks, would familiarize himself with the rules, conform his acts to their requirements, and report all infringements thereof. Such of the rules as are supposed to be applicable are pleaded, but it is not necessary to set them out in this connection.

"It was further averred in defense that the kicking of the car had been prearranged and the program fully understood by the deceased. That he knew it would be his duty to uncouple the car. That same would be kicked, and that it was his duty to give the kick signal before uncoupling, or see that it was given. That the signal that was given was usual and customary, and one that deceased knew would be given in doing the work. That such was the usual and customary way of doing the work in the Galveston yards. Wherefore it is alleged the danger therefrom was one of the ordinary risks of the employment. That the cars were equipped with automatic couplers, which rendered it unnecessary for him to go in between the cars, or to expose any part of his body between them, and that if he did so he assumed the risk.

"It was also charged that he was guilty of contributory negligence in exposing himself between the cars without either having given the signal or knowing it had been given. That, though expressly warned by the rules to look out for signals, take no risks, etc., he failed to take these precautions, and therefore was the cause of his own injury.

"J. H. Hill, the husband of the plaintiff in this case, was, on March 9, 1900, an employe of defendant in the capacity of switchman, and between 5 and 6 o'clock on the afternoon of the day named, while engaged in switching in the yards of defendant at Galveston, he was run over and killed by defendant's train. At the time of the accident he was engaged in switching, and was, as expressed by the witnesses, 'working in the field.' The crew had been out in the west yards, near the bay bridge, in the city of Galveston, and had come back from the west with a string of twenty-five or thirty cars, mostly box cars, the engine being at the rear end of the train backing it up. The front car of the train as it backed was a flat car loaded with lumber, and the next two cars were cinder cars. Deceased rode from the west yards to the middle yards, near Forty-second street, on the front end of the flat car, as they backed up. The other members of the crew were John McCarty, foreman; C. A. Hooks, another switchman; Chris Miller, engineer, and Thomas Gillam, the fireman. In coming from the west yards the train of cars was propelled at a speed of about ten miles an hour, but when it neared a point designated as 'Fogarty switch' it was slowed down to a speed of two or three miles an hour for the purpose of allowing Hill to alight, throw the switch for 'rip track No. 2' (on which it was intended to place the end car), and to uncouple the car so it could be kicked in.

"Fewell, the night yardmaster, was near the switch, and receiving from McCarty a signal as to what was intended, threw the switch, and Hill proceeded at once to uncouple the car. McCarty saw him approach the point in the train where the uncoupling was to be made and reach out as if to take hold of the uncoupling lever; but at that point he ceased to be in view of McCarty. No witness testified that the acts of Hill were seen after that, though the track at that point was straight. Fewell, who was then standing at the switch, and had thrown it for the side track, and who was a considerable distance from Hill (some of the witnesses place him as much as seventy-five yards away), gave the kick signal. This was received by McCarty, who transmitted it to the engineer, who obeyed it without knowing the exact position of Hill. In response to the kick signal, the speed of the train was increased from two or three to seven or eight miles an hour. It was at once discovered that Hill was under the train, and Fewell gave the emergency stop signal. The train was promptly stopped. The car was in fact uncoupled, and as a result of the response to the kick signal and the increased speed of the train, rolled into the side track as intended. Hill was found between the rails with his arm and leg crushed, two of the cars having passed over him, and he died a few hours later. He was a sober, experienced, and efficient switchman, and had been at work in defendant's yards at Galveston for several years. No one saw Hill fall, and there is no direct testimony as to how he fell, his position just before the fall, or what caused it. No one testifies whether he went in between the cars wholly or partially in his effort to uncouple. No one testifies whether the lever worked hard or easy at that moment.

"An inspection afterward showed that the coupling apparatus was in good condition and worked easy. The coupling apparatus was automatic,—the Santa Fe car being equipped with a Trojan coupler, and the Texas and New Orleans car with a Janney coupler. Each had a lever extending to near the side of the car, which, when in perfect order, could be raised with the hand, without going between the cars; but the evidence was conflicting as to whether it could be raised without leaning toward the cars and putting the arm and part of the body in such a position as to be struck if the speed of the train was suddenly increased. There was also testimony to the effect that frequently coupling apparatus in apparently perfect condition would work hard and require considerable force to lift the lever, and that in such case more of the body would be put between the cars in the effort to lift it.

"The evidence is practically undisputed that the kick signal was given and obeyed about the time Hill undertook the uncoupling, and that no one knew his position, or just what he was doing at that time. It is also true that the signal was given without warning to him and without knowledge that the uncoupling had been safely accomplished.

"It was shown that if the slack of the train was extended the cars could not have been uncoupled, as the tension would hold the pin tightly in place, and that a back-up signal was necessary in order to loosen the tension, but the evidence is conflicting as to whether the slowing of the train had not effected this.

"There is a difference between a back-up signal and a kick signal. The back-up signal means that the engineer shall back the train. A kick signal means that the speed shall be sufficiently increased to throw the cut off car into the side track by the force of the increased momentum, without following the car into the switch with the rest of the train. The signal given by Fewell and transmitted to the engineer was a kick signal. Hill knew that the car was to be kicked when cut off, and that the kick signal was necessary and should be given by some one. The main point of conflict in the evidence is whether his coemployes should not have waited for him to give it, or notified him that it would be given by another than himself.

"Another point of conflict is whether, if another gave it, he should have apprised himself that Hill was safe before he gave it.

"Defendant adduced evidence to show that it was the custom in the Galveston yards of defendant to give the kick signal without reference to the position of the man doing the uncoupling, and that Hill knew of this custom and should have expected the signal and increased speed of the train, and should have been prepared for it. There was evidence also that this was the general method and custom in switching with automatic couplers. On the other hand, there was evidence that the general method was to await a signal from the man who was doing the uncoupling, as he was the man in danger and the only one who could know when the work was safely done.

"The circumstances also showed that there was no obstruction between

Hill and Fewell, and that if he had been looking he could have seen the signal; but there was also evidence to the effect that his attention should have been fixed on the task before him, and that, as the signal should have been given by him, he need not have looked out for a signal which he had no reason to expect.

"It was shown that the acts of Fewell made no change in the program as to the kicking of the car, as the kick signal must have been given at some time during the progress of the work, in order to accomplish the end desired.

"By the eleventh assignment of error, the following portion of the court's charge is assailed: 'If from the evidence you believe that a program had been arranged between Hill and the other employes of defendant in the switch crew, for the switching of the car, and that under said program the said Hill knew that at or about the time he went to uncouple the car the train would be put in backward motion and started backwards for the purpose of giving the end car a kick that it might roll into the side track, and that such was the usual and customary method at the Galveston yards for doing the work, and that said Hill knew of such fact, if any, and knew when he went to do the work that said car would be kicked in said manner, without signal from or notice to him, and that notwithstanding such knowledge on the part of Hill, he put himself in a position to be struck by the backward movement of the train, if any (if you so find the facts), you will return your verdict for defendant, as in such state of facts he should have assumed the risk of such backward movement.'

"The defenses were nowhere submitted disjunctively. We sustained the assignment because the part of the charge complained of conjunctively submitted several matters of defense, so that the jury were required to believe all of them to have been established in order to find for defendant on the issue of assumed risk. In so holding we followed the case of Railway v. Conroy, 83 Texas, 214. In Kershner v. Latimer, 64 Southwestern Reporter, 237, the Court of Civil Appeals at Dallas also followed the case cited. This court recently applied the same rule in the case of Oil Company v. Burow, 4 Texas Court Reporter, 867. When we decided the question our attention had not been called to the cases of Railway v. Brown, 78 Texas, 402, and Railway v. Wood, 69 Texas, 679.

"In view of the apparent conflict between these cases, we respectfully certify for your decision:

"1. Was the portion of the charge complained of such affirmative error as to require a reversal in the absence of a special charge requesting the submission of the defenses disjunctively?

"2. If error, was it cured by the following special charge, given at the request of the plaintiffs: 'You are instructed that if you believe from the evidence that J. H. Hill knew, or by the exercise of ordinary care must have known, that the train of cars was to be backed up forcibly without waiting for a signal from him to that effect, or without notice to

him that it would be so backed up, then he assumed the risk of such injury, and the plaintiffs would not be entitled to recover, and in such event your verdict should be for defendant.'

"On the issue of the proper method of doing the work in which deceased and his coemployes were engaged at the time of the accident, and as to the custom of the Galveston yards, evidence was admitted as to the custom prevailing in the. yards of railway companies generally, and the evidence of plaintiffs' witnesses tended to show that the custom in other yards differed from the custom alleged by defendant as prevailing in its yards at Galveston, and was safer. Upon this phase of the case the defendant requested the following special charge, which the court refused to give.

" 'You are charged that if you believe there was a general practice with the yard crews in the matter of giving signals, and who should give them in doing the work, in the defendant's yard, and a method of work known and usual with the switching crews in question; and if you further believe from the evidence that in some other yards, or with some other railroad employes, there was a different practice in vogue with reference to who should give signals and how the work should be done, you are charged that it is immaterial in this case how the work may have been done in any other yard, and in such case you will not consider the testimony as to what may have been the practice in any other yards; and if you believe from the evidence that there was a general habit and custom of doing the work in the defendant's yard, then, unless the plaintiff has established by a fair preponderance of the testimony that the signals given by foreman McCarty, and by the yardmaster, Fewell, were not the proper and customary signals to be given at that time, then you will find for the defendant, without regard to any other issue in the case, and so say by your verdict.'

"No charge was given limiting the effect of the testimony in case the jury should find the existence of the custom in the Galveston yard as alleged by defendant. We held it was error to refuse it.

"3. Did the court err in refusing to give the requested instruction?

"The evidence adduced by plaintiff was of such a nature as to require a charge on the issue of contributory negligence and assumed risk, even if defendant had offered no proof, but was not of such a character as to authorize the trial court to charge that the defenses were established as a matter of law.

"In the light of Railway v. Geiger, 79 Texas, 21; Railway v. Reed, 88 Texas, 439; Railway v. Martin, 63 Southwestern Reporter, 1089, and Railway v. Allbright, 26 Southwestern Reporter, 250, we held that it was misleading to impose the burden of proof on defendant, as it might induce the jury to look alone to the testimony offered by defendant in support of the issue. The defendant did not request an instruction advising the jury that they might look to all the testimony for evidence upon the issue, and no such charge was given.

"4. Did we err in so holding?

"We have concluded that plaintiff's case is one of merit; that the verdict on the issue of liability is supported by the evidence, and that the judgment ought to be permitted to stand, unless the matters above presented constitute material error."

We answer the first question in the negative. The charge of the court stated a correct proposition of law, and nothing appears which indicates that the jury was probably misled by it. Railway v. Wood, 69 Texas, 679; Railway v. Brown, 78 Texas, 402. The case of Railway v. Conroy, 83 Texas, 216, seems to be in conflict with the two cases cited, but the report of the case is so meager, and the opinion of the court so indefinite, that we are unable to determine upon what ground the decision is based. We do not believe that it was the intention to overrule the cases before cited. However that may be, we are satisfied with the rule announced in Railway v. Wood and Railway v. Brown.

The second question need not be answered.

To the third question we answer, there was no error in refusing the charge requested. The effect of the charge would have been to place the burden upon the plaintiffs to prove that the signals given were not in compliance with any custom upon that subject which prevailed in the Galveston yards, whether reasonably safe or not, and without regard to the knowledge of the deceased of the existence of such custom. The custom could not affect plaintiff's rights unless deceased knew of its existence, or was chargeable with notice of it. Railway v. Hinzie, 82 Texas, 628.

We answer the fourth question in the negative. If the plaintiffs' evidence made it necessary that they should explain the conduct of the deceased to exculpate him from the charge of contributory negligence, it was improper for the court to charge the jury that the burden of proof was upon the defendant to establish the defense of contributory negligence, because such charge was calculated to lead the jury to believe that they should consider alone the evidence offered by the defendant upon that issue. Railway v. Reed, 88 Texas, 447.