KIRBY LUMBER CO. v. WILLIAMS.

(Court of Civil Appeals of Texas. Galveston. April 30, 1913. On Motion for Rehearing, May 29, 1913.)

1. MASTER AND SERVANT (§ 189*) — "VICE PRINCIPAL"—WHO IS.

One to be a "vice principal" must possess authority to superintend, control, and command employés and hire and discharge them.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*

For other definitions, see Words and Phrases, vol. 8, pp. 7313–7316.]

2. MASTER AND SERVANT (§ 287*) — INJURIES TO SERVANT—INSTRUCTIONS.

Where, in an action for injuries to an employé in a sawmill, the court charged that, if the sawyer had authority to control the em-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

ployé and to hire and discharge him, the sawyer was a vice principal and the employer was liable for his negligence, a charge that a vice principal is one who is intrusted with authority to superintend or command other employés, or with authority to direct other employés as to their duties, and to hire and discharge them, was not misleading.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1034, 1045, 1051, 1052, 1054–1067; Dec. Dig. § 287.*]

3. TRIAL (§ 256*)—INSTRUCTIONS—REQUESTS —NECESSITY.

An instruction in an action for injuries to an employé by the negligence of a coemployé, occupying the position of vice principal, that, if the coemployé was not clothed with power to control and superintend the employé and hire and discharge him, the employé and coemployés were fellow servants, and the employer was not liable, was not affirmatively erroneous, and in the absence of a request to charge it was not error to fail to submit the issues disjunctively, though the employer was entitled to a verdict on the jury finding either that the coemployé had no authority to control the employé or to hire and discharge him.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

4. MASTER AND SERVANT (§ 279*)—INJURY TO SERVANT—VICE PRINCIPAL—EVIDENCE.

That an employé had the power to hire and discharge employés, essential to make him a vice principal, may be inferred from evidence that he repeatedly exercised such authority with the knowledge and acquiescence of the employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975, 978–980; Dec. Dig. § 279.*]

5. MASTER AND SERVANT (§ 294*)—INJURIES— INSTRUCTIONS—SUFFICIENCY.

Where the jury must have understood from the instructions given that they could not find for an employé suing for a personal injury unless they found that a coemployé had authority to hire and discharge him, and the court also stated that, if the coemployé did not have authority to direct and control the employé and to hire and discharge him, the verdict must be for the employer, the issue of vice principal was sufficiently submitted.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1157, 1161, 1162–1167; Dec. Dig. § 294.*]

6. MASTER AND SERVANT (§ 296*)—INJURY TO SERVANT — ISSUE OF DISCOVERED PERIL — EVIDENCE.

Where, in an action for injuries to an employé engaged as a block setter in a sawmill and required to ride the carriage between the doggers thereon and by means of a lever regulate the thickness of the lumber to be sawed in accordance with the orders of the sawyer, whose duty it was to run the carriage by means of a lever, witnesses testified that the sawyer was looking at the saw at the instant the employé lost his balance and fell or was thrown from the carriage, and from his position he could hardly have failed to see the employé fall, and that he could have stopped the machinery in time to have avoided the accident, the issue of discovered peril was sufficiently raised to justify an instruction thereon.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

7. EVIDENCE (§ 471*)—OPINION EVIDENCE— STATEMENT OF FACTS.

The testimony of a witness that an employé hired and discharged employés is not objectionable as mere conclusion of the witness, but is a statement of fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

8. EVIDENCE (§ 471*)—OPINION EVIDENCE— STATEMENT OF FACTS.

The statement of a witness that the foreman in a sawmill never put any man back on the carriage against the sawyer's wishes only means that the witness never heard of such an occurrence, and the probative force depends on the means of knowledge of the witness.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

9. EVIDENCE (§ 473*)—OPINION EVIDENCE— STATEMENT OF FACTS.

A witness familiar with the operation of machinery and who saw its movement on the happening of an accident to an employé may state that the employé's fall from the machinery was caused by a sudden and unexpected reverse movement of the machinery.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2220–2233; Dec. Dig. § 473.*]

10. MASTER AND SERVANT (§ 279*)—INJURY TO SERVANT—VICE PRINCIPAL—EVIDENCE.

Evidence *held* to support a finding that an employé guilty of negligence causing injury to a coemployé was a vice principal of the coemployé so as to make the employer liable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975, 978–980; Dec. Dig. § 279.*]

Appeal from District Court, Jefferson County; John M. Conley, Judge.

Action by James J. Williams against the Kirby Lumber Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Oliver J. Todd, of Beaumont, and Andrews, Ball & Streetman, of Houston, for appellant. Blain & Howth and M. G. Adams, all of Beaumont, for appellee.

PLEASANTS, C. J. This suit was brought by the appellee against the appellant to recover damages for personal injuries sustained by appellee while in the service of J. S. Rice and Cecil A. Lyons, receivers of appellant company, and which are alleged to have been caused by the negligence of said receivers or their representative, Jim Bailey, who it is alleged was a vice principal.

The plaintiff alleged in his trial petition, in substance: That on or about the 3d day of February, 1909, he was in the employ of Cecil A. Lyons and J. S. Rice, as receivers of the Kirby Lumber Company, at their sawmill at Rogan, Tex., in the capacity of a block setter. That his duties as block setter required him to ride the carriage between the two doggers thereon and by means of a lever to regulate the thickness of the lumber to be sawed in accordance with the orders of one Jim Bailey, the sawyer, whose duty it was to run the carriage by means of a lever, which controlled the steam, used as motive power, and regulated the speed of the carriage, and that while the carriage was being operated plaintiff was thrown from his balance down upon the carriage with the

result that his left leg was caused to come in contact with an upright timber fastened to the carriage track and called the stationary board, and by such contact his leg was so injured that it was necessary to have it amputated. That on the occasion of the accident the sawyer, Jim Bailey, failed and omitted to run the line all the way through a certain crooked log then and there being sawed, and, having started and brought the carriage back a few feet, he suddenly and without warning reversed his lever and shot or propelled the carriage forward again to finish cutting the line, whereby plaintiff, while holding to his lever and using due care, was thrown from his balance down and upon the carriage, and that thereafter, when the line was cut through, said sawyer immediately and suddenly reversed his lever and brought his carriage back at an unreasonable and dangerous speed, and that thereby the plaintiff, being then and there overbalanced, was so turned or thrown on the carriage that his left leg was caused to come in violent contact with the stationary board, resulting in his injuries. This allegation is reiterated in language substantially that the said Jim Bailey carelessly, negligently, suddenly, and without warning reversed the carriage while on its backward course, and at the same time shot and propelled it forward with great and unreasonable speed, violently throwing plaintiff off his balance, and thereupon carelessly, negligently, recklessly, and suddenly brought said carriage back with great and unusual speed to the other end of the carriage track, striking and crushing plaintiff's leg against said stationary board. That the said Jim Bailey was given timely notice and warning of plaintiff's dangerous situation, and of his peril, and was immediately flagged to stop the carriage, and that after having such notice and being flagged to stop as aforesaid, and after knowing of plaintiff's peril and danger, he carelessly and recklessly propelled said carriage with great speed and violence to a distance of 25 feet, thereby causing said injuries, when by the use of ordinary care after having been so warned and notified he could and would have stopped said carriage within two or three feet, and could and would thereby have prevented said injuries, with safety to said property, to himself, and to the other members of said carriage crew. That said sawyer, Jim Bailey, negligently, carelessly, and recklessly failed and omitted either to see plaintiff in his peril and to use ordinary care to stop said carriage and prevent said injuries, or, having seen him, thereafter carelessly, negligently, and recklessly failed to stop the carriage when he had ample opportunity to do so by the use of ordinary care before plaintiff was injured.

These allegations of negligence were predicated upon the further essential allegation that the said sawyer, Jim Bailey, was a vice principal; it being alleged that he was then and there authorized and empowered by the defendant to direct and control plaintiff and the other members of the carriage crew in their work and to hire and discharge them, and to direct the method and manner of said work, and to issue orders and enforce obedience thereto, and that he had theretofore frequently, habitually, and customarily hired and discharged any and all members of the carriage crew and frequently, habitually, and customarily exercised such authority and such substantial and potential power with the knowledge of defendant's authorized agents.

The defendant answered by general demurrer, general denial, pleas of assumed risk and contributory negligence, a special plea denying that the sawyer, Jim Bailey, was a vice principal, a special denial that the sawyer, Jim Bailey, had the authority to hire and discharge, and a special plea that the sawyer, Jim Bailey, and the plaintiff were fellow servants, because of which relation the defendant was in no respect liable for the negligent acts or omissions, if any, on the part of said Jim Bailey.

The petition also contains allegations of facts showing the liability of appellant for the injury to appellee, if caused by the negligence of said receivers as alleged in the petition, and it was agreed on the trial that the facts so alleged were true, and no issue is made upon this appeal as to appellant's liability for the acts or omissions of the receivers.

The trial in the court below resulted in a verdict and judgment in favor of appellee for the sum of $8,000. This is the second appeal of this case. The opinion of this court on the former appeal is reported in 136 S. W. 1182.

The evidence shows that plaintiff was injured at the time and in the manner alleged in the petition. At the time of his injury he was in the employment of the receivers of defendant company as block setter for the saw in defendant's sawmill at Rogan, Tex. His duties required him to ride on the carriage of the saw and by means of a lever to regulate the thickness of the lumber being sawed as directed by the sawyer. The carriage was 23 feet in length and operated upon a track 60 feet long and 5 or 6 feet wide. The sawyer operated the carriage by means of a lever which controlled the motive power and stood on the side of the track a few feet distant from the carriage and about equal distance from each end of the track. Steam was the motive power used, and the carriage could be moved swiftly back and forth on the track by the use of the lever; the method by which the power was applied being known as the "shotgun feed." To operate the carriage on the track, the sawyer stood, holding this lever, with his face to the carriage. By pulling the lever back and forth the sawyer

would let in as much or as little steam as he wanted, could run the carriage at any speed desired, and could start and stop it either slowly or suddenly. While the carriage was moving, either forward or backward, at full speed, it could be suddenly stopped and immediately shot in the opposite direction. On the side of the carriage opposite where the sawyer stood while operating his lever was an upright exhaust pipe, situated to the sawyer's left hand, about a foot from the carriage. This pipe was 10 or 15 feet towards the saw from a point opposite the sawyer's station. About the same distance to the right of the sawyer, and on the opposite side of the track, was what is called the stationary board, which was an upright piece of lumber fixed close to or against the track.

On the occasion of plaintiff's injury a crooked log was being sawed, and the sawyer, Jim Bailey, for some reason failed to run the line all the way through the log. He started the carriage back under a full head of steam as if he intended to go all the way to the back end; but by the time he had brought his carriage back from four to six feet from the front end he discovered that he had not cut the line all the way through and that a slab was left on the log, whereupon he suddenly reversed the carriage, made an immediate stop, and instantly shot it forward under a full head of steam and finished the line. This sudden stopping of the carriage while on its backward course and shooting it forward again threw plaintiff off his balance. As the carriage was shot forward, plaintiff was out of balance, stumbling and falling. While in this falling or overbalanced position, the motion of the carriage brought him in contact with the exhaust pipe, which knocked him down on the carriage, his face down and his left leg hanging off the side of the carriage. While he was in this position the sawyer reversed the carriage and sent it rapidly toward the rear of the track. By this movement of the carriage plaintiff's left leg was brought in violent contact with the stationary board and was so badly broken and and mangled as to require its amputation. The sudden changes in the direction and the rapidity of the movement of the carriage by Jim Bailey was unusual and unnecessary and in the circumstances was a negligent manner of operating the carriage, and this negligence was a proximate cause of the injury to appellee.

The evidence is also sufficient to sustain the finding that Bailey saw and realized appellee's peril in time to have prevented his injury by the use of the means at his command and failed to use proper care after the discovery of the peril to avoid the injury.

It was the duty of the sawyer to look out for the safety of the employés on the carriage, and, if Bailey failed to see appellee at the time he struck the exhaust pipe and fell upon the carriage, he was not keeping a proper lookout and was negligent in this regard. The sawyer, Bailey, was intrusted with authority to direct and control the work of the other employés who were engaged in the operation of the carriage and saw and had authority to hire and discharge such employés. The appellee was not guilty of any negligence which contributed to his injury and he had not assumed the risk of the injury.

[1, 2] The first assignment of error complains of the sixth paragraph of the charge on the ground that it erroneously instructed the jury as to the meaning of the term "vice principal." The charge complained of is in the following language: "A 'vice principal,' as that term is used in this case, is one who is intrusted by the company with authority to superintend, control, or command other persons employed by the company, or with authority to direct any other employé in the performance of his duty and to hire and discharge him." This charge is not a correct statement of the law. In order to make Jim Bailey a vice principal it was necessary to show that, in addition to his authority to "superintend, control, and command" appellee, he had authority to hire and discharge him. Young v. Hahn, 96 Tex. 99. This paragraph of the charge, when strictly construed in accordance with its punctuation, would authorize the jury to find that, if Jim Bailey was intrusted by the company with authority to superintend, control, and command the appellee, he was vice principal, and that the authority to hire and discharge was only necessary to make an employé a vice principal when such employé merely directed other employés in the performance of their duties. But we do not think it probable that the jury were misled by this inaccuracy in the definition of the term "vice principal."

After giving this and other general definitions of terms used in the charge, the court directly applied the law to the facts in evidence in the following language: "Now, bearing in mind the foregoing instructions as to 'fellow servants' and 'vice principal,' you will first determine from all of the evidence whether or not the relationship between the sawyer, Jim Bailey, and the plaintiff was that of a fellow servant or vice principal; and in this connection I charge you that if you find from a preponderance of the evidence that Jim Bailey, as sawyer for the defendant company in its mill at Rogan, Tex., on or about the time of plaintiff's alleged injury, was clothed with authority by the defendant company to superintend and control the plaintiff as block setter on the carriage, and was intrusted with the duty and power of directing his labor, and that plaintiff was bound to obey the orders of said Jim Bailey in the class, grade, or kind of work for which he was employed, and upon which he was en-

gaged at the time of the alleged injury, and if you further find from a preponderance of the evidence that the said Jim Bailey had the power and authority to hire and discharge the said plaintiff, then you are charged that the said Jim Bailey was at such time and place a vice principal of the defendant company, and if the said Jim Bailey was guilty of negligence (if any) as hereinafter submitted to you in this charge, and such negligence proximately caused plaintiff's injury, then the defendant company would in law be guilty of negligence; but on the other hand, if you should believe that the said Jim Bailey was not clothed with such power and authority to control and superintend plaintiff and direct his labor, and that he did not have power and authority to hire and discharge him, then, if you so find, you are charged that the plaintiff and the said Jim Bailey were at such time and place fellow servants and that the defendant company was not liable for the negligence (if any) of the said Jim Bailey, and your verdict should be for the defendant company." By this paragraph of the charge the jury were in effect told that, to authorize a finding that Bailey was a vice principal, they must find that he had authority to hire and discharge. When the two paragraphs of the charge are read and considered together, we do not think the jury could have been misled by the inaccurate definition given in paragraph 6. The issue of whether or not Bailey had authority to hire and discharge other employés was one of the main issues presented by the evidence, and there was no issue in the evidence as to his being intrusted with authority to superintend, control, and command appellee; such authority being shown by all of the evidence. Under this state of the evidence, and in view of the court's instruction, which makes a finding that Jim Bailey was a vice principal depend upon whether or not he had authority to hire and discharge appellee, it would be unreasonable to assume that the jury in finding for plaintiff did not find that Bailey did have such authority, or that they understood from the charge as a whole that they could so find.

[3] The second assignment of error complains of the following portion of the charge above set out: "But on the other hand, if you should believe that the said Jim Bailey was not clothed with such power and authority to control and superintend the plaintiff and direct his labor, and that he did not have power and authority to hire and discharge him, then, if you so find, you are charged that the plaintiff and the said Jim Bailey were at such time and place fellow servants, and that the defendant company was not liable for the negligence (if any) of the said Jim Bailey, and your verdict should be for the defendant company." This is clearly not affirmative error. The defendant would have been entitled to a verdict if the jury had found either that Bailey was not intrusted with authority to direct and control the appellee in his work or that he did not have authority to hire and discharge him, and this would have been the proper way to have submitted the fellow-servant issue. But it is equally true, as stated in the charge, that, if the jury found that Bailey did not have the authority to direct and control and to hire and discharge appellee, defendant would be entitled to a verdict. The proposition of law stated in the charge was correct, and there is nothing to indicate that the jury was misled by the failure of the court to submit these issues disjunctively. Railway Co. v. Wood, 69 Tex. 679, 7 S. W. 372; Railway Co. v. Brown, 78 Tex. 402, 14 S. W. 1034; Railway Co. v. Hill, 95 Tex. 629, 69 S. W. 136.

What we have said in discussing the first and second assignments disposes of the question presented by the third assignment which complains of the charges above quoted on the ground that they were misleading and must have confused the jury upon the issue of whether Bailey was a vice principal or a fellow servant of the appellee. We do not think it probable that the jury were misled by the inaccuracies in the charge before mentioned, and the assignment cannot be sustained.

[4] The trial court did not err in refusing to give the special charge requested by appellant and set out in the fourth assignment of error. It was not necessary, in order for the jury to find that Bailey had the power to hire and discharge, that the evidence should show that such power and authority had been expressly delegated to him by the receivers. If, as shown by the evidence, he repeatedly exercised such authority with the knowledge and acquiescence of the receivers, or of their representatives, the jury could find that he had the authority, notwithstanding there was no direct evidence that the authority had been expressly conferred upon him. Williams v. Kirby Lumber Co., 136 S. W. 1182. The requested charge instructed the jury that, in order to find that Bailey had the power to hire and discharge appellee, they must believe from the evidence "that such power and authority had been actually delegated to and conferred upon him by the receivers of the Kirby Lumber Company or their agents having power to delegate and confer such authority." This was in effect an instruction that, unless the evidence shows that express authority to hire and discharge had been conferred upon Bailey, the jury could not find that he had such authority. This is not the law, as we understand it, and the charge was properly refused. Our conclusions upon this question are more fully stated in our former opinion in this case before cited, and we adhere to the views there expressed.

[5] The fifth assignment complains of the failure of the court to give the jury "a prop-

er instruction to the effect that, if the sawyer, Jim Bailey, did not possess the power and authority to hire and discharge the plaintiff, the said Bailey in such event was not a vice principal, for that such was the law applicable to the facts of the case, and the court's attention was directed thereto by special charges requested by the defendant, and, the vice principalship issue being a sharply contested issue in the case, it was the court's duty to thus direct the jury, especially in view of the special charges requested by the defendant calling his attention thereto, and especially in view of the erroneous manner in which the issue had been by the court submitted, and the failure of the court to so instruct the jury was highly prejudicial to the defendant."

As we have before shown, the jury must have understood from the court's charge that they could not find for the plaintiff unless they found from the evidence that the sawyer, Jim Bailey, had authority to hire and discharge plaintiff. In stating the reverse of this proposition, the jury were told that, if Jim Bailey did not have authority to direct and control plaintiff in his work and to hire and discharge him, they should find for the defendant. This, as we have before said, was not affirmative error, but if the defendant had presented a proper charge instructing the jury that they should find for the defendant, unless they believed that Jim Bailey did have the authority to hire and discharge the plaintiff, such charge should have been given. The requested charges submitting this issue were not correct, and with this issue of authority in Jim Bailey submitted other issues and were so framed that they were not calculated to call the attention of the court to the technical inaccuracy in the charge given the jury, and were doubtless not intended to have such effect. The assignment cannot be sustained.

The charge complained of by the sixth assignment was not upon the weight of the evidence in the respects claimed in the assignment, and did not impose any duty upon the sawyer, Jim Bailey, more onerous than the law imposed. The assignment is overruled.

[6] The evidence was, we think, clearly sufficient to raise the issue of discovered peril, and the court did not err, as contended by the seventh assignment of error, in submitting that issue to the jury. The place at which plaintiff lost his balance and fell upon the carriage was within a few feet of where the sawyer stood and in the direction in which he was facing, and there was nothing to obstruct his view. If, as testified to by several witnesses, Bailey was looking at the saw at the instant that plaintiff lost his balance and fell or was thrown upon the carriage from the position of the saw with reference to that of Bailey and plaintiff, he could hardly have failed to see the plaintiff fall. Certainly the evidence warrants the finding that he did see him, notwithstanding his denial of that fact. The evidence also shows that the carriage could have been stopped almost instantly, and there was ample time after plaintiff fell to have stopped it before it brought him in contact with the stationary board and thereby caused his injuries. If Bailey saw the plaintiff when he fell upon the carriage, he must necessarily have realized his peril.

[7] There was no error in the rulings of the court in admitting the testimony of witness for the plaintiff that the sawyer, Jim Bailey, hired and discharged employés who worked under him in defendant's sawmill at Rogan, over defendant's objection that such testimony was the mere opinion and conclusion of the witness. The testimony to which this objection was made, as shown by the eighth assignment of error, is as follows: Arden Wright, a witness for plaintiff, testified by deposition "that Bailey hired Jim Williams and Nathan Kerr and Eula Wills and discharged Eula Wills and a negro whose name witness did not know." We cannot agree with appellant that this statement of the witness was a mere opinion or conclusion. The words "hire" and "discharge" have a simple and well-known meaning, and it requires no expert or technical knowledge to be able to answer the question of whether one person hired and discharged another, and the statement by the witness that Bailey hired and discharged the persons named is a statement of fact and not an expression of opinion or mere conclusion of the witness.

[8, 9] This is also true of the statement of the witness Withers that Mr. Young, the mill foreman, "never put any man back on the carriage against Bailey's wishes," and the statement of the witness Wright that the sudden movement of the carriage which caused the plaintiff Williams to fall was "unexpected." Neither of these statements is the mere opinion or conclusion of the witness, but each is a statement of fact. The statement that Young "never put any man back on the carriage against Bailey's wishes" necessarily means only that the witness never knew or heard of such an occurrence.. The probative force of the statement would depend upon the witness' means of knowing, and if this was slight the weight of the statement would be little, but its competency would not be destroyed. We think it was clearly competent for the witness, who was familiar with the operation of the carriage and saw its movement by Bailey on the occasion in question, to state that plaintiff was caused to fall by "a sudden and unexpected reverse movement of the carriage." Any unusual or uncalled for movement of the carriage could be properly termed unexpected, and this was evidently the sense in which the word "unexpected" was used by the witness.

[10] As we have before said, the evidence is sufficient to sustain the finding of the jury that the sawyer, Bailey, had authority to hire and discharge the persons working under him on the carriage. Several witnesses testified that he repeatedly exercised such authority and the testimony warrants the conclusion that his superior, Young, knowingly permitted him so to do. It was also shown that his predecessors in position at this mill had and exercised such authority, and that sawyers at other mills of defendant did likewise. Such being the testimony, we cannot say that the verdict of the jury upon this issue is so against the weight and preponderance of the evidence as to authorize this court to disturb it, and the assignments complaining of the verdict on this ground cannot be sustained.

What we have said disposes of all of the question presented in appellants' brief. We have not deemed it necessary to discuss in detail all of the assignments of error presented, but each of said assignments has been duly considered, and none of them should, in our opinion, be sustained. It follows that the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.

## On Motion for Rehearing.

Appellant complains in its motion for rehearing of the fact finding in our opinion herein "that the exhaust pipe was 10 or 15 feet towards the saw from a point opposite the sawyer's station, and about the same distance to the right and on the opposite side of the track was what is called the stationary board." This finding would put the stationary board and exhaust pipe 20 or 30 feet apart. There is no evidence in the record to justify a finding that they were as much as 30 feet apart. The evidence is that the stationary board was about 3½ feet to the right of the sawyer's station, and the longest distance given by any witness between the two was 20 feet.

Complaint is also made of the following finding: "While in this falling or overbalanced position the motion of the carriage brought him (the plaintiff) in contact with the exhaust pipe, which knocked him down on the carriage, his face down, and his left leg hanging off the side of the carriage. While he was in this position the sawyer reversed the carriage and sent it rapidly toward the rear of the track." This finding is inaccurate in stating that the sawyer reversed the carriage and sent it rapidly towards the rear of the track after appellee had fallen upon the track. The carriage was reversed while appellee was in an overbalanced position, but when he struck the exhaust pipe and was knocked down on the carriage it was then on its way to the rear of the track.

We do not regard these errors in the opinion as material, but make the corrections because we desire the statements to be accurate. We have carefully considered the motion for a rehearing, and do not think it presents any sufficient ground for reversal of our judgment affirming the judgment of the court below. It is therefore overruled.