DAVIS, Federal Agent, v. CHRISTENSEN.*
(No. 8244.)

(Court of Civil Appeals of Texas. Galveston.
Dec. 6, 1922. Rehearing Denied
Jan. 18, 1923.)

1. Master and servant ⊜276(7)—Evidence held to show brakeman was struck by waterspout.

In an action for injuries to a brakeman struck by waterspout or its attachments, evidence held to sustain verdict that he was so struck and caused to fall from train.

2. Evidence ⊜588—Mathematical calculation not based upon undisputed evidence does not defeat jury finding upon evidence as a whole.

A mathematical calculation, not based upon undisputed or admitted figures, cannot be avail-

ed of to defeat the findings of the jury upon the evidence as a whole, as showing such findings are contrary to the physical facts.

3. Appeal and error ⊜1062(1)—Error in submitting issue not raised by evidence not reversible where jury not probably misled.

Error in submitting an issue not raised by the evidence is not reversible when the evidence is such that it cannot reasonably be presumed that the jury were misled or in any way influenced in finding their verdict by such error.

4. Trial ⊜352(5)—Form of special issue held proper.

In action by brakeman for injuries from being struck, while on freight train, by waterspout or its attachments, special issue, asking if plaintiff was caused to fall from the train by being struck by the "waterspout or conveyor, or any of its attachments, or the rope used in connection therewith," held not erroneous as submitting more than one issue; the issue of whether he was struck by the rope not being raised by the evidence, and there being no attachment to the spout except an iron rod, which the evidence showed was an integral part of the water spout.

5. Trial ⊜260(3)—Failure to charge requiring proof by preponderance of evidence not error where court charged that burden of proof to show by preponderance of evidence was upon plaintiff.

In personal injury case, failure to instruct that, unless the jury believed from the preponderance of the evidence that defendant was negligent as alleged in the petition, they must find for defendant, was not error where the court had charged that the burden of proof was upon plaintiff to prove by a preponderance of the evidence the facts upon which he relied to show defendant's negligence and plaintiff's injury.

6. Appeal and error ⊜232(3)—Refusal of court to give special instruction held not properly raised.

In view of the statute contemplating that a requested charge shall be prepared and presented to the court in such form as to properly submit the requested issue to the jury, where the only request of defendant for a charge upon the necessity of plaintiff's proving his case by a preponderance of the evidence was contained in an objection to the court's charge upon burden of proof, and the only assignment of error raising the question complained of error in the court's refusal to sustain defendant's objection to the charge on burden of proof, in that it did not affirmatively instruct the jury that, if they found plaintiff's allegations of negligence were not proven by the preponderance of the evidence, they should find for defendant, held, that defendant did not properly raise the question of error in the court's refusing to give a special instruction properly requested.

7. Trial ⊜352(5)—Special issue held not upon weight of evidence as assuming fact.

Where second special issue was conditioned upon affirmative answer to the first, held, it was not objectionable, as being upon the weight

of evidence, in that it assumed the facts queried in the first, since, when read with the first, the jury could not fail to understand that such facts were for their determination.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by C. Christensen against James C. Davis, Federal Agent of the Louisiana Western Railway Company. From judgment for plaintiff, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood and Garrison & Watson, all of Houston, for appellant.

Jones, Sexton & Jones, of Marshall, for appellee.

PLEASANTS, C. J. This suit was brought by the appellee against the appellant to recover damages for personal injuries sustained by him on the 28th day of August, 1919, while in the service of the Louisiana & Western Railroad Company, and which are alleged to have been caused by the negligence of the operatives of the railroad company.

The petition alleges, in substance, that on or about the 28th day of August, 1919, plaintiff, while engaged in the performance of his duties as brakeman on an interstate train of the Louisiana & Western Railroad Company, which was then being operated by Walker D. Hines, Director General of Railroads for the United States government, was knocked off or caused to fall from the train by being struck by a waterspout or some of its attachments, or the rope connected therewith, which those in charge of the operation of the railroad had negligently placed or left in a position to strike a person standing upon the top of the train. The defendant answered by general demurrer and general denial and by special pleas of contributory negligence and assumed risk. The cause was submitted to a jury upon special issues, and upon return of the verdict judgment was rendered in favor of plaintiff for $12,000.

The evidence shows that plaintiff was injured substantially in the manner and under the circumstances alleged in his petition. The accident occurred at a station on the railroad known as Midland. When the train, which was moving west at a speed of from 20 to 25 miles an hour, reached Midland the plaintiff, in the performance of his duties as brakeman, was on the top of the caboose, which was the rear car in the train. At a distance of between 30 or 40 feet west of the station building there was an elevated water tank near the railroad track, placed there for the purpose of furnishing water for the boilers of locomotives used by the railroad. The water from this tank was conveyed to the boilers through a long spout which connected with the tank at its bottom, and worked on a spring which held it,

when not in use, in an almost upright position. When in its position, the top of the spout being higher than the tank, no water could flow therefrom. When a locomotive took water from the tank it was necessary for some operative of the train to reach over from alongside the boiler and catch hold of a rope which hung from a short iron rod attached to the top of the spout, and by this means pull the spout over and down until its upper end came over or into a hole in the top of the boiler, and when in this position water would be discharged from the tank through the spout into the boiler. When sufficient water had been obtained the rope would be released, and the spout, if in proper condition, would resume its upright position. There was a cupola on the top of the caboose which extended three or four feet above the main roof of the car. The rear end of this cupola was near the rear end of the car, the exact distance therefrom not being shown. There is a footboard running around the bottom of the cupola, the distance from this footboard to either side of the car being about 12 inches. There is an iron handrail around the cupola about 4 inches from its top.

Plaintiff testified, in substance, that when the train passed the station building he was standing at the northeast end of the cupola, holding onto the rear handrail, with one foot on the footboard and the other in the space between the footboard and the north side of the car, and was looking at the indicator (tin figures showing the number of the train) in the north side of the cupola and near the rear end to see if they were properly placed, and while in this position something struck him in the head, and he lost consciousness. He did not know what hit him. Just after the train passed he was found on the ground by the side of the track about 125 feet west of the water tank, with a wound in the head, the exact location of which is not shown. The fact that plaintiff fell from the train about 125 feet west of the water tank, and was there found in an injured condition just after the train passed, is shown by all the evidence.

A. T. Digby, a traveling salesman, testified for plaintiff that he was standing in the door of the station building when the train from which plaintiff fell passed; that plaintiff, when he passed the witness, was standing on the top of the caboose near the northeast end, facing east. Relative to plaintiff's position on the train, he says:

"The man was looking down the way the train came from. He was not looking the way the train was going. He had his back entirely toward the track and the waterspout and all. He was standing up looking toward the east."

This witness further testified:

"I did see something happen to that brakeman. I saw him struck when he was passing

by the little iron piece that leads down from the waterspout. He was struck in the back of the head. The little iron piece about which I spoke was attached to the waterspout itself and the ropes were attached to it, and I saw when that struck him in the head. When that little iron piece struck him it knocked him unconscious to the top of the caboose. After falling on top of the caboose, he lay there until the train had gone about 125 feet. I hollered to the conductor or brakeman that was down stairs on the platform to catch him before he fell, but before he got to him, he rolled off the side of the car, fell to the ground about 125 feet west of the water tank. The waterspout that struck this man extended out from the center of the tank at an angle of about 45 degrees to the south, placing it over the track. I couldn't say just how far out over the caboose it extended. I can say it extended out as far as the center of the caboose. I saw it strike him in the back of the head is about all I can tell."

M. L. Duke and wife, witnesses for the plaintiff, both testified that they saw plaintiff fall from the train at Midland on the day before mentioned. Mr. Duke testified that he saw plaintiff staggering, and saw him fall from the top of the train after he had passed the water tank, and that he fell from the top of the tenth or twelfth car from the rear of the train. He further testified:

"I did notice the position and the condition of the waterspout and the rope or ropes connected therewith after the accident. I did not notice them before he fell. The waterspout and the rope or ropes were not in an upright position alongside the tank, but they were leaning outwards and down partly over the track at an angle of about 35 or 45 degrees from an upright position. That the waterspout would be in about 5 or 8 feet of the top of a box car, and that the lower end of the rope was hanging lower, about 4 to 6 feet to the top of the box car."

Mrs. Duke testified:

"At the time of this happening, I was in my car on a public highway, waiting for my husband, who was repairing Mr. Anding's car. I was on the south side of the railroad track about 100 feet from the water tank. I am not a good judge of distance. I was sitting in my car talking to Mr. Coles. I did not count the number of cars in the train. The train was going west towards Houston. It was a long train. I could not say how far the engine was from the depot when I first saw the plaintiff. He was about 5 or 6 feet from the waterspout, or about half a car length. I do not know the number of the car he was on. It is my impression that it was about 6 or 8 cars, perhaps, from the caboose, and he was standing and walking. He was standing at about the center of the car, and, as I recall it, he was neither to one side nor the other. I do not know how high it is from the ground, but I would say that the base of the waterspout is about 10 or 12 feet from the ground, while the end of the waterspout is possibly 18 or 20 feet. However, I cannot say exactly, as I am no judge of exact distances on the ground, or especially up in the air. The waterspout was leaning outward over the track at an angle of about 45 degrees."

She further testified that she noticed the waterspout leaning out over the track just before the man fell, and that she did not know that the rope struck him, but "thought the waterspout itself struck him about the head or shoulders, or he dodged to keep it from striking him, and lost his balance and fell staggering. He fell on the right side of the tank." She also testified that she noticed the position of the waterspout after the man fell, and that it was leaning over the track in such a position that it would strike a man standing on a box car passing under it; that it leaned far enough to knock off a man either standing or sitting on the top of a box car passing under it.

V. C. Coles, a witness for plaintiff, testified:

"After the accident happened, out of curiosity to know what caused the man to fall from the train, I went and looked at the waterspout and the ropes connected with the water tank. I noticed that the waterspout was leaning out over the track at about a 45 degree angle. If I remember correctly about this rope, I think it was wrapped over the spout. I cannot say whether they leaned as far as the center of the track, however; it would not have to lean that far out to knock a man off the top of the box car, either standing or sitting. I do not know exactly how near the rope or ropes were to the top of the freight train while it was passing. * * * Between the end of the rope and the top of the box car of a train passing there would not be much space, possibly 3 feet from the end of the rope and the top of a box car of a train passing under it." That it was a knotted rope and was hanging over the spout. "The knot was right on the end of the rope."

The agent of the railroad company at Midland testified for the defendant, in substance, that when the train from which plaintiff fell passed the station he was on the outside of the station building, about 75 feet east therefrom; that he went to this place to give a telegram to the conductor as he passed on the caboose, and that as he handed the message to the conductor, who was on the rear platform of the caboose, he looked up to see if the indicators on the cupola showed the correct number of the train, and saw the plaintiff lose his balance and fall on the top of the caboose. He was positive that plaintiff fell on the caboose some distance east of the waterspout. When he saw the man fall he called to the conductor, and told him his brakeman had fallen, and to go up and catch him before he fell from the train. The conductor of the train corroborated this witness as to the delivery of the message, and his being informed by the agent before the train reached the water tank that the plaintiff had fallen on the top of the caboose. Each of these witnesses

testified that he examined the waterspout after the accident, and that it was standing up in its normal and proper position.

The conductor further testified that when he got to the plaintiff he had fallen on the ground, and when asked how he came to fall he replied that he did not know.

J. L. Taylor, a witness for the defendant, testified, in substance, that he was a brakeman on the train from which plaintiff fell, and was riding on a very high furniture car in the front portion of the train, and that as he passed by the waterspout it was standing in its proper position. This witness further testified that he had known the plaintiff about 6 months before this accident, and that at various times they slept in the same room at Echo, Tex., a station on defendant's railroad, and that on one of these occasions, when they were sleeping in the same room, the plaintiff here had a nervous attack, which the witness described as follows:

"What attracted my attention to Christensen was his waking me up by making the noise —groaning like somebody was in agony, like he was suffering pain. I then got up. Christensen was in another bed in the same room with me; there were two beds in that room. When I got up I offered him a glass of water. I tried to wake him up, but he didn't wake up just then. After a while he did wake up, after I had gone and gotten a glass of water. I offered him that water, but he didn't drink it. I judge it was about 3 or 4 minutes from the time I heard him groaning until I offered him the water. I have seen people having one of the epileptic fits. The appearance of Mr. Christensen at the time at Echo, and his condition, was very similar to the condition of the people I have seen have epileptic fits."

Defendant also introduced evidence showing the height of the caboose, the height of the water tank, and its distance from the track. The figures shown by the evidence demonstrate that if the spout was hanging from the tank at an angle of 45 degrees its upper end would have been 8 feet above the top of the car.

Plaintiff, in rebuttal, testified that the testimony of the witness Taylor as to the occurrence in the room at Echo, Tex., was not true, and that he had never had a nervous attack of the kind described by Taylor.

Issues Nos. 1 and 2 submitted to the jury by the charge of the court are as follows:

"Special Issue No. 1: Was the plaintiff caused to fall from the train by being struck by the waterspout or conveyor or any of its attachments, or the rope used in connection therewith? Answer 'Yes' or 'No,' as you may find the facts to be.

"Special Issue No. 2: If you have answered special issue No. 1 'Yes,' then were the agents or employés of the persons operating the road guilty of negligence in leaving or permitting the said waterspout, its attachments, or the rope which struck the plaintiff to be in a position to strike the plaintiff and injure him? Answer 'Yes' or 'No,' as you may find the facts to be."

To both of these the jury answered "Yes."

[1] Under appropriate propositions appellant's first contention is that the answer of the jury to special issue No. 1 is so against the great weight and preponderance of the evidence, and is in such conflict with the physical facts shown by the evidence, that it should be set aside, and a new trial granted the defendant. We cannot agree with appellant in this contention. It is true that there are direct and irreconcilable conflicts in the testimony of plaintiff's witnesses as to the details of the occurrence in which plaintiff received his injuries, but, the jury being the exclusive judges of the credibility of the witnesses and the weight to be given to their testimony, it was for the jury alone to determine which of these conflicting statements was true, and they had the right, in determining this question, to accept or reject in whole or in part the testimony of any of the witnesses.

The evidence of all the witnesses, both plaintiff's and defendant's, except that of Mr. and Mrs. Duke, shows that plaintiff was knocked down or fell upon the top of the caboose, and thereafter fell to the ground after the caboose had reached a point not less than 125 feet west of the water tank. If the jury accepted plaintiff's testimony as to his position at the time he was struck, they necessarily rejected the testimony of the witness Digby that at the time plaintiff was struck he was standing near the northeast end of the caboose looking east, but the rejection by them of this portion of Digby's testimony did not require that they reject it all. The adage "False in one thing, false in all," is often very persuasive as an argument, but is not a legal axiom binding upon either a court or a jury, and in this case the jury might have believed that Digby was mistaken or was swearing falsely as to the plaintiff's position at the time he was struck, and yet have believed his statement that he saw the iron rod attached to the end of the waterspout strike the plaintiff on the head and knock him to the floor of the caboose. In the same way, the jury may have determined the other conflicts in the testimony, and, the determination of such conflicts being, under our system of jurisprudence, within the exclusive province of the jury, the courts are not authorized to disturb the finding of the jury unless such finding is so against the great weight and preponderance of the evidence as to be clearly wrong, and to justify the conclusion that in reaching their verdict the jury must not have been influenced only by the evidence before them. We cannot reach such a conclusion in this case, and appellant's contention must be overruled.

If, as contended by appellant, the physical

facts shown by the undisputed evidence make it impossible for the plaintiff to have been struck by the waterspout, the verdict should not and would not be allowed to stand. But the record does not sustain this contention. Conceding, for the sake of argument, that the distance of the water tank from the track, the height of the tank and car, and height of the spout are shown by the undisputed evidence, the fact remains that the angle at which the spout was hanging from the tank is not so shown. The witnesses who say the angle was 45 degrees were manifestly only making an estimate which cannot be relied on as accurate, and which, if the defendant's evidence as to the distance from each other and the height of the tank and the car are accurate, is directly contradicted by the statement of the very witnesses who fix the angle at 45 degrees that the spout hung low enough to strike a man standing or sitting on the top of the caboose.

[2] It goes without saying that a mathematical calculation not based upon undisputed or admitted figures cannot be availed of to defeat the findings of the jury upon the evidence as a whole. Pollock v. Railway Co., 103 Tex. 69, 123 S. W. 408. The next contention of appellant is that the court erred in the form of special issue No. 1 submitted to the jury. The ground of this complaint is three-fold, the first being that the issue is not sufficiently specific, in that it cannot be determined from the answer of the jury thereto whether the jury found that the plaintiff was struck and caused to fall by the waterspout, or by some of its attachments, or the rope connected therewith; second, that it submitted more than one question to the jury, each of which might have been answered Yes or No, which is contrary to the well-established rule that requires that only a single question should be submitted for consideration of the jury in each of the special issues submitted; and, third, that it submits an issue not raised by the evidence. We will discuss these objections to the charge inversely to the order in which they are presented.

[3] There is no evidence tending to show that plaintiff was knocked down on the top of the caboose, or was caused to fall therefrom or from the train, by the rope attached to the waterspout, and that issue should not have been submitted to the jury. But the error in submitting an issue not raised by the evidence will not authorize a reversal of the judgment when, as in this case, the evidence is such that it cannot be reasonably presumed that the jury were misled or in any way influenced in finding their verdict by such error. There being ample evidence showing that the plaintiff was struck and knocked down on the top of the caboose by the iron rod on the end of the waterspout, it cannot be assumed that the jury disregarded this evidence, and found that he was knocked down or caused to fall by the rope attached to the iron rod when there is no evidence to sustain such finding.

[4] The first two objections to the charge above set out, which in effect present the same question, cannot be sustained. The form in which the issue was submitted, which follows the allegations of plaintiff's petition, asks the jury if plaintiff was caused to fall from the train by being struck by the "waterspout or conveyor, or any of its attachments, or the rope used in connection therewith," and this might appear to submit more than one issue. But, as we have before said, the issue of whether plaintiff was struck or caused to fall by the rope is not raised by the evidence, and there was no attachment to the waterspout other than the iron rod, which all the evidence shows was an integral part of the waterspout. If the allegation of the petition had only been that plaintiff was caused to fall from the train by being struck by the waterspout, such allegation would have been sustained by proof that he was caused to fall by being struck by the iron rod on the end of the waterspout, because all the evidence shows that this rod was an essential part of the waterspout. There was no necessity for the pleading to differentiate the iron rod from the waterspout, and they might properly have been regarded as one and the same cause of the accident both in the pleading and the charge. It could make no possible difference in appellant's liability whether the iron rod or some other part of the waterspout struck the plaintiff. It is only necessary to allege or prove the substance of an issue, and it is wholly immaterial in this case whether the jury found that the plaintiff was struck by the iron rod or some other part of the waterspout.

We do not think the issue of assumed risk was raised by the evidence, but, if this conclusion is not sound, the inaccuracy in the court's charge upon that issue is not such error as requires a reversal of the judgment.

[5] The failure of the court to instruct the jury that, unless they believed from the preponderance of the evidence that the defendant was negligent, as alleged in plaintiff's petition, they must find for the defendant, is not a sufficient reason for the reversal of the judgment. The court instructed the jury that—

"The burden of proof is upon the plaintiff to prove by a preponderance of the evidence the facts upon which he relies to show the defendant's negligence and the plaintiff's injury. And upon the defendant to establish the defense of assumed risk and contributory negligence."

[6] The only request of the defendant for a charge upon the preponderance of the evidence is contained in the following objec-

tion to the charge of the court upon the burden of proof:

"The defendant objects to and excepts to that paragraph of the court's charge wherein he defines the burden of proof, for the reason that said charge does not instruct the jury affirmatively that, if they find and believe from the evidence that plaintiff has not proved the allegations of negligence alleged in his petition and submitted to the jury in the court's charge, then they should return a verdict for the defendant, and now asks the court, in connection with the charge on the burden of proof, to instruct the jury that, if they do not believe that plaintiff has established the allegations of his petition as to negligence submitted to them, that they will return a verdict for the defendant."

The statute contemplates that a requested charge shall be prepared and presented to the court in such form as to properly submit the requested issue to the jury, and it is manifest that the court could not have submitted as a part of his charge the objection thereto presented by the defendant.

The assignment of error on which appellant's proposition complaining of the charge in the respect we are now considering is based complains of error in the refusal of the court to sustain appellant's objection to the charge on the burden of proof, for the reason that it does not affirmatively instruct the jury that, if they find plaintiff's allegations of negligence are not proven by the preponderance of the evidence, they must find for the defendant. We hardly think appellant has properly raised this question of error because of the refusal of the court to give a special instruction properly requested. But, waiving this question, we do not think the court was called upon in submitting the case upon special issues to do more than inform the jury that the burden of proof was upon the plaintiff to show by the preponderance of evidence the negligence alleged against the defendant. Having this charge in mind, the jury, when asked to find from the evidence whether plaintiff was caused to fall by being struck by the waterspout, must have known that they could only so find from the preponderance of the evidence, and it would have given them no further information as to the law governing their action to have told them that they could not so find if the preponderance of the evidence did not support plaintiff's allegations of negligence.

[7] The objection to special issue No. 2 as being upon the weight of the evidence, in that it assumes that the plaintiff was struck by the rope attached to the waterspout, is not tenable, because, when read in connection with issue No. 1, upon which it is conditioned, we do not think the jury could have failed to understand that the question of whether plaintiff was struck by the rope

was for them to determine. In addition to this, our finding above stated, that there was no evidence raising this issue, and that, in view of the evidence showing that plaintiff was struck by the iron rod on the end of the waterspout, it cannot be reasonably presumed that the jury was misled by the charge, applies as well to the form of special issue No. 2 as to that of special issue No. 1.

If any error is shown by any of the remaining propositions presented by appellant, it is not of sufficient gravity to authorize a reversal of the judgment.

We are of opinion that the judgment should be affirmed, and it has been so ordered.

Affirmed.