## POWELL et ux. v. ROCKOW et al.

### No. 2359.

Court of Civil Appeals of Texas. Beaumont.

March 30, 1933.

Rehearing Denied April 5, 1933.

T. H. Ridgeway and E. B. Simmons, both of San Antonio, for plaintiffs in error.

T. J. Newton and J. M. Woods, both of San Antonio, for defendants in error.

**WALKER, Chief Justice.**

This appeal is by writ of error, but the parties will be referred to as appellants and appellees.

On or about the 29th of January, 1930, appellants, Ida H. Powell and her husband, J. O. Powell, sold to appellees, Lillian Rockow and her husband, Paul Rockow, their lease on the Angelus Hotel in the city of San Antonio, and the furniture and fixtures in the hotel for $4,000; $1,500 in cash and the balance in a note, to be paid in monthly installments of not less than $50, with 8 per cent. interest and with maturity clause upon default in the monthly payments, secured by a chattel mortgage upon the property. Appellees paid the installments due on February 1, March 1, April 1, and May 1, and on or about the 10th day of May, 1931, brought this suit to rescind the sale and to recover back the cash consideration paid, and to cancel the unpaid note on allegations that the representations upon which they purchased the property were falsely and fraudulently made. Appellants answered only by general and special demurrers, general denial, and by cross-action against appellees, praying for judgment for the balance due on the note, with foreclosure of their chattel mortgage. The following issues were submitted to the jury, answered as indicated:

"Special Issue No. 1: Did the defendant Ida H. Powell or the defendant, J. O. Powell, or either of them, represent to the plaintiffs Mrs. Lillian Rockow or Paul Rockow that the Angelus hotel was a hotel of a good reputation, that it had a lucrative patronage and that its patrons were of good reputation and of the best people, and that if these plaintiffs did purchase the good name of said hotel together with the lease, furniture and furnishings from the defendants and operate said hotel, that plaintiffs could thereby earn for themselves a comfortable living and save enough in addition to said living to, in two years from the operation of said hotel, pay off the note of twenty five hundred dollars?" To which the jury answered: "Yes."

"Special Issue No. 2: Were the plaintiffs induced by said representations to purchase said hotel and to pay therefor the sum of fifteen hundred dollars in cash and execute their note for the sum of twenty five hundred dollars?" To which the jury answered: "Yes."

"Special Issue No. 3: Were the representations as set out in Special Issue No. 1 true?" To which the jury answered: "No."

On the verdict, judgment was entered in favor of appellees against appellants for $1,700, with foreclosure of the equitable lien pleaded by appellees against the property to secure the payment of the $1700 and for cancellation of the unpaid note. The appeal was to the San Antonio Court of Civil Appeals, transferred to this court by order of the Supreme Court.

Under their evidence, appellees went to San Antonio in December, 1929, from Indiana, for the health of Mr. Rockow; they rented a room in the Angelus Hotel and in that way met appellant Mrs. Powell; Mr. Rockow was confined to his bed most of the time and his wife spent most of her time when in the hotel with him, and knew nothing about the business of the hotel or its general reputation or the class of its patronage; it was necessary for her to find work; Mrs. Powell was kind and sympathetic, visited them in their rooms, and when she learned they had $1,500 offered to sell them her furniture in the hotel and transfer to them the lease, and, in inducing them to make the trade, made the representations submitted to the jury by question No. 1; she represented further that the chief value of the property was the good will of the hotel, and that the furniture itself was worth only about $500; the price paid by appellees for the property was much more than it was worth. As to the representations made by Mrs. Powell, Mrs. Rockow testified:

"A. She said the place she had there she wanted to sell and wanted to get out of that business because she had been in it for so many years, and that it would be a nice little place for me to buy and I could look after Mr. Rockow and still have a suitable income and pay all of my expenses and have a good living.

"Q. What did she say to you with reference to the length of time the hotel had existed? A. Thirty some years.

"Q. What did she say with reference to the reputation of the hotel? A. Well, she told me that it was—represented it to me as a good standing—of a long standing and good reputation, and lucrative patronage, and that its patrons were of good reputation, and that the people were of the best.

"Q. Well, what happened then with reference to the trade? A. Well, I put all trust and faith in her because I didn't have any other friends, didn't know anybody here to go to, being a utter stranger in San Antonio, and I placed all confidence in her and thought she was trying to help me.

"* * * Q. Did you rely upon what she told you? A. Yes, every word.

"Q. Well, in accordance with those representations that you say she made to you, what happened? A. Well, I spoke to my husband about it and told him the way it had been represented that I thought if things were true, which was sure they were, because I didn't feel like anybody should take advantage, tell me things that were not true,—I said, 'Well, it looks it's about the best thing we could do if we take that and invest our money in there, and that if things were like they were repre-

sented to us,' which I believed they were,— 'that I could take care of him and make a living for both of us.'

"Q. Did you agree then to take the hotel? A. Yes, sir.

"Q. Prior to the transfer did you have any conversation with Mrs. Powell with reference to the possession of the hotel, seeing the landlord? A. Yes, we did, but she said that would not be necessary, that she would take care of all that. She said if the landlord would see Mr. Rockow, see the condition that he was in and if he would take one look at me, she said we would be done for, because I was just about as inexperienced looking for anything like that, and his condition would make it all the worse."

Appellant Mrs. Powell testified:

"Q. You didn't represent to her that she could pay off that note by the operation of the hotel and earn herself a nice little living? A. Yes, sir, I told her that. I told her it would be a good home and business combined.

"Q. That it was a lucrative business and that she would be able to pay that note out from the rents—earnings from the hotel? A. Yes, sir.

"Q. And at the same time too you told her she could look after him and wait on him if he needed attention? A. That is what I have done.

"Q. Well, I say, you told her that, didn't you? A. Yes, sir. I have no unkind feeling at all towards the Rockows."

On the issue that the representations were false and fraudulently made, Mrs. Rockow testified:

"Q. What was the character of the patrons that came up there after you took charge of it, so far as you saw? A. Well, people came up to me and asked for things which we did not have.

"Q. What do you mean, what 'things' which you did not have? A. Well, the things that had been served there before.

"Q. Well, was it liquor or women? A. Liquor and women and all those things.

"Q. Would a man come up there and want you to procure a woman for him? A. Yes, sir.

"* * * Go ahead, Mrs. Rockow. A. People came up and registered and I took them to the rooms and they asked me for women and I told them that we didn't have any she they insisted upon me and I told them that I was not that kind of a woman.

"Q. Well, what statements did they make to you? A. Well, some of them would apologize; they said they used to be served anything they asked for there and they said, 'It seems it has changed hands' and I said, 'Yes, it has.'

"Q. Now, did that continue during the first few months that you were there? A. Yes, it did until they learned, some of them came back and learned it had changed hands.

"Q. Then did that patronage come any more? A. No.

"* * * Q. Why could you not afford to hire help? A. The place didn't do enough to pay the rent and to pay Mrs. Powell and besides live."

Mr. F. C. Vogley, sergeant of detectives for the city of San Antonio, testified that he had been connected with the police department of the city for about fifteen years; that he knew the Angelus Hotel, knew its general reputation with the people of San Antonio; that the place had been raided several times and prostitutes taken out of it; that the reputation of the hotel was bad; that he had raided the hotel; that the officers were called there "on the average of two or three times a month; we found men and women there that were not married, violating Section 1 and Section 2, Laws of the City of San Antonio; they were prostitutes"; found liquor there on one occasion. The effect of Mrs. Rockow's testimony was that she turned away the class of patronage that appellant had been entertaining at the hotel and tried to build up a new class of patronage; that she and her husband were decent people and tried to run a decent hotel; that they lost money in trying to run the hotel, having to sell their automobile and use the husband's insurance in order to meet living expenses. The evidence was further to the effect that they met the monthly rent payments as they matured, and the lease transferred to them by appellants had expired before this case was tried. The other evidence was also to the effect that appellees had had no experience whatever in operating hotels or boarding houses prior to this transaction with appellants.

It is but fair to appellants to say that their testimony refuted the contention of appellees in every respect, as to the general reputation of the hotel and the character of its patrons. But the issue was for the jury and, under the statement made, the verdict has full support. This conclusion overrules all propositions challenging the insufficiency of the evidence to support the verdict.

██ There is no merit in the contention that appellees had to show a "loss" before they could have rescission of the contract. They contracted for a decent hotel and, under their testimony, the Angelus Hotel was nothing more than a cheap bootlegging joint and assignation house. However, as said above, appellees raised the issue that they suffered a material financial loss by reason of the false representations. We overrule appellants' contention that the representation as to the $2,500 that appellees could pay it off in two years "was a representation de-

pendent upon future contingencies and could not form a basis of the rescission of the contract." This point was not made in the exceptions to the charge, as submitted to the jury.

■ Appellants advance the following proposition: "It was error for the court to submit to the jury Special Issue No. 1, embracing more than one issue, one of which was unsupported by the evidence." This proposition is advanced under the thirteenth assignment of error, being the exception reserved to the court's charge, which reads as follows: "The court erred in submitting Special Issue No. 1 and Special Issue No. 3 for the reason that Special Issue No. 1 contained more than one issue of fact and Special Issue No. 3 was made dependent on Special Issue No. 1; said special issues, as submitted, were duplicitous, misleading and were not in the form provided for by law." It appears from the assignment that there is no basis for the proposition that one of the issues submitted by question No. 1 "was unsupported by the evidence." Under Isbell v. Lennox, 116 Tex. 522, 295 S. W. 920, the proposition is too general, as is also the assignment of error, to constitute error. Appellants should have directed the court's attention particularly to the distinct issues submitted by question No. 1, which made it duplicitous. However, under the pleading of appellees, we do not think the form of the question constituted error. The different elements of question No. 1 were pleaded by appellees conjunctively as constituting the fraud upon which they sought rescission. As pleaded by them, the fraud consisted of the making of all the representations; that, conjunctively, the representations were false and, as pleaded, they were submitted to the jury. It thus appears that the several elements of this question were pleaded as constituting one issue and, therefore, it was not error to submit them conjunctively, as was done. Therefore, the form of the question was not reversible error. Ft. Worth & R. G. Railway Co. v. Keith (Tex. Com. App.) 208 S. W. 891.

■ There was no error in rendering the personal judgment against Mrs. Powell for the $1,700. Though a married woman, she did not plead coverture as a defense; besides, under the evidence, the Angelus Hotel was her separate property and the $1,700 was paid to her as her separate property; therefore, she was personally responsible for its repayment to appellees.

■ Appellants insist that they should have had an instructed verdict on the following grounds: (a) Appellees failed to offer evidence "that they had offered to restore" at least the furniture and fixtures to appellant; (b) having "retained and operated said hotel more than two months after discovering the alleged fraud," appellees could not have rescission; (c) to have rescission, it was incumbent upon the defendants in error to show by the pleadings and evidence the condition said furniture and furnishings were in at the time same was tendered back to plaintiffs in error, in order to place the court in position to do equity between the parties; (d) in order to have rescission, it was necessary for appellees to show, by pleading and proof, that the furniture and furnishings were in the same condition when tendered back as when received by them from appellants; (e) in order to have rescission it was necessary for appellees to tender to appellants "the reasonable value of the rents, revenues and use of said hotel, and said furniture and furnishings during the time they used the same," which was not done; (f) "having retained all the revenues and benefits from the operation of said hotel," appellees could not have rescission; (g) failure of appellees "to make tender of payment for the use of the hotel precluded them from rescinding the contract"; (h) there being no evidence as to the condition of the furniture and furnishings, the trial court had no power to render an equitable judgment upon the answers of the jury rescinding the contract; (i) appellees having "retained all the benefits from the operation of said hotel" could not have rescission. These contentions are all overruled. Appellees pleaded the contract, the inducements that led them to make the contract, and that these inducements were falsely and fraudulently made. Under their allegations, the contract was voidable because they never gave their assent to take over the hotel that was, in fact, delivered to them. In their petition they tendered the property back to appellants, subject to their equitable lien, to secure the repayment of the advance of the cash paid by them to appellants. This tender, and the prayer for rescission, were declined by appellants; and the contract pleaded by appellees was put in issue by appellants' general denial. They also reaffirmed the contract, as in fact made, and asked for affirmative relief thereon by their prayer for judgment for the balance due on the note and for foreclosure of their mortgage lien. Under the allegations of appellees' petition, they were entitled to rescission if the facts pleaded by them were found to be true, unless this relief was defeated by an affirmative defense on the part of appellants. They made no defense except that of general denial. All the contentions made by appellants for instructed verdict involved issues that should have been specially pleaded; that is to say, it was the duty of appellants to raise the issue by an affirmative plea that appellees had ratified the contract; that the furniture and furnishings had been abused by appellees; that it was tendered back in a worse condition than when received; that appellees had profited by their occupancy and operation of the hotel; that they had retained revenues and benefits that

should be accounted for, etc. Black on Rescission and Cancellation, § 64, says: "The plea or answer in a suit for rescission * * * should cover all the equities of the case. * * * A plea or answer alleging affirmance of the disputed contract by the plaintiff, or his ratification of it or acquiescence in it, or his laches in regard to disaffirming it, must allege fully and specifically his discovery of the fraud, etc., or knowledge or notice of the facts, which alone would make a ratification acquiescence effective." See, also, Wisdom v. Peek (Tex. Civ. App.) 220 S. W. 210. In Gray v. Allen (Tex. Civ. App.) 243 S. W. 684, it was held that matters of estoppel and a claim for reimbursements should be pleaded by the defendant. In Patrick v. Roach, 21 Tex. 255, our Supreme Court said: "The general rule of practice in suits for rescission of sales for fraud * * * is for the parties to set up their respective equities for rents and profits, or for improvements and interest on the purchase money, etc. This is a rule of practice in equity, and has the most imperative force in our system of procedure."

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.