## PURE OIL CO. v. POPE et al.
No. 2547.

Court of Civil Appeals of Texas. Beaumont.
Oct. 1, 1934.

Rehearing Denied Oct. 17, 1934.

176

J. Russell Mount and Hunt & Hunt, all of Houston, for appellant.

Howth, Adams & Hart, of Beaumont, for appellees.

WALKER, Chief Justice.

On or about the 11th day of September, 1930, in the course of his employment with appellant, Pure Oil Company, Ira Glendon Pope was burned to death while engaged in repairing a safety valve in No. 7 vapor line as then operated in appellant's refinery. United States Fidelity & Guaranty Company was appellant's compensation carrier. The insurance company, recognizing its responsibility to Mrs. Ersal Pope and Ira Glen-don Pope, Jr., the surviving wife and minor son of deceased, made a lump sum settlement with them, with permission of Industrial Accident Board. After this settlement was made, Mrs. Pope, for herself and as next friend for her minor son, brought this suit against appellant as an action for exemplary damages for the death of their husband and father, Ira Glendon Pope. On the verdict of the jury judgment was for Mrs. Pope for $3,000 and for the minor son for $9,000, from which this appeal was regularly prosecuted.

The lower court did not err in overruling appellant's plea in abatement, based upon the lump sum compensation settlement between its insurance carrier and appellees. The terms of this settlement were that United States Fidelity & Guaranty Company was to pay and did pay the claimants, Ira Glendon Pope $1,844.56, and Mrs. Ersal Pope $1,-794.29, in full satisfaction and redemption "of said U. S. Fidelity & Guaranty Company liability to claimant by reason of said accidental injury sustained on September 11, 1930, while in the employ of Pure Oil Company."

It thus appears that the claimants were settling with the insurance carrier only for the compensation allowed by the provisions of our Workmen's Compensation Act, which by section 5 of part 1 (Vernon's Ann. Civ. St. art. 8306, § 5) provides: "Nothing in this law shall be taken or held to prohibit the recovery of exemplary damages by the surviving husband, wife, heirs of his or her body, or such of them as there may be of any deceased employee whose death is occasioned by homicide from the wilful act or omission or gross negligence of any person, firm or corporation from the employer of such employee at the time of the injury causing the death of the latter."

This action for exemplary damages falls directly within section 26, article 16 of the Constitution, which reads as follows: "Every person, corporation, or company, that may commit a homicide, through wilful act, or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide."

The settlement, therefore, did not include the claim for exemplary damages.

We overrule appellant's contention that the facts were insufficient to raise

against it the issue of gross negligence. Under this proposition appellant, a corporation, made two points in its original brief. First, appellant contended that it was entitled to an instructed verdict because appellee failed to allege and prove "that an officer of the corporation was guilty of or previously or subsequently ratified the gross negligence complained of." On submission in this court, on authority of Ft. Worth Elevators Co. v. Russell, 70 S.W.(2d) 397, 409, Morton Salt Co. v. Wells, 70 S.W.(2d) 409, and Southwestern Gas & Electric Co. v. Stanley, 70 S.W. (2d) 413, all by the Supreme Court, appellant abandoned this contention and conceded that Mr. Allen, its assistant superintendent, and Mr. McFarlen, head stillman, in immediate charge of the work Ira Glendon Pope was doing at the time of his death, were its vice principals under authority of the cases just cited.

The second point is that the facts and circumstances attending the death of Ira Glendon Pope were insufficient to raise the issue of gross negligence. Briefly summarized, these facts and circumstances were as follows: On the 11th day of September Pope and a fellow employee by the name of Ferguson went on top of still No. 7 to repair a safety valve in vapor line No. 7 running from this still to its dephlegmator; connected with the dephlegmator was a charging line, in no way connected with the vapor line, used to convey benzene from the dephlegmator. In this line was a relief valve, and just beyond the relief valve was an ell in the charging line, made of cast iron. According to the testimony of appellees' witness, this valve was grossly defective, and had been in that condition for many years. The assistant superintendent and the head stillman, named above, had known of this condition for many years, but had refused to take out the defective valve; instead they would have it repaired from time to time when complaint was made of its defective condition. When repaired, the valve would operate a day or two and then the defects would reappear. When in a defective condition, this valve checked the flow of benzene in the charging line, causing the pressure in the line to increase until an employee, by hammering on the pipe or by using other means, would cause the valve to release. Sometimes the pressure would force the valve open before the employee could reach it. The theory of appellees' petition, supported by their evidence, was that, while Ira Glendon Pope was repairing the valve in the vapor pipe, a distance of about 20 feet from the valve just described, the relief valve ceased to operate

until the pressure upon it, created by the operation of the pump, forced it open, and that the force of the benzene, when released by the valve, struck the cast-iron ell, causing it to break; that through the hole in the ell caused by the breaking benzene was thrown or pumped on Pope and Ferguson which, catching fire, burned them to death. The testimony was further to the effect that cast iron was not the proper material for ells in charging lines; that other large oil companies did not use cast iron, but malleable iron, a material many times stronger than cast iron. The testimony was further to the effect that, when released by the defective valve, the benzene would strike this cast-iron ell with the force of a hammer, and if strong enough the force would break the ell. After the fire a piece of cast iron broken out of the ell, about 4x6 inches, was discovered not far from still No. 7; its condition showed that it was broken and not burned. Appellees' theory of the case as stated above has abundant support in the record. Appellant's theory was that the fire resulted from an explosion in the vapor pipe; but if we understand the evidence this theory has no support except the testimony of one witness which was refuted conclusively by the physical condition of the vapor pipe. Answering questions Nos. 1, 2, and 3, the jury found that the ell in appellant's charging line broke on September 11, 1930; that the relief valve in the charging line was defective and failed to work or operate properly immediately before the fire started; and that the failure of the relief valve in the charging line to work or operate properly immediately before the fire started directly and proximately caused the breaking of the ell in the charging line. In our judgment the facts support the jury's answers to these three questions.

By question No. 4 the jury found that appellant was guilty of gross negligence in maintaining the defective relief valve and the cast-iron ell. The facts and circumstances summarized above clearly support the jury's answer to question No. 4.

■ Pope did not assume, as a matter of law, the risk that resulted in his death—the defective relief valve and the cast-iron ell. There was not a suggestion in the evidence that he had ever heard of these defects. On this issue the rule in Texas is as stated by 3 Labatt, § 1190, p. 3207: "The first step in the process of establishing this appreciation is to show that the servant was chargeable with the knowledge of material conditions which were the immediate cause of his in-

jury. Manifestly, he cannot be held to have assumed a risk where he was ignorant of the facts on which a proper appreciation of the risk depended."

█ Nor was deceased guilty of contributory negligence, as a matter of law, in going upon still No. 7. Under appellant's rules, deceased and Ferguson were required to get permission of the stillman in charge of still No. 7, before going upon the still to repair the valve in the vapor pipe. The testimony was that deceased knew of this rule, and at all times prior to this occasion had secured permission of the stillman before attempting to go upon the still to repair the valve. The stillman testified that on this occasion Pope and Ferguson did not ask his permission. The stillman was an employee of appellant. This issue was sent to the jury and found in favor of appellees; that is, that Pope did ask permission of the stillman before going upon the still. Under the following authorities the verdict has support: Kirby Lumber Co. v. Chambers, 41 Tex. Civ. App. 632, 95 S. W. 607, 614; Gulf, C. & S. F. Railway Co. v. Haden, 29 Tex. Civ. App. 280, 68 S. W. 530; International & G. N. Railway Co. v. Johnson, 23 Tex. Civ. App. 160, 55 S. W. 772. In the Chambers Case, a witness for the Kirby Lumber Company testified that he had cautioned Chambers and his crew against riding on the footboard of the engine on Bowie street, and that Chambers had cautioned his crew against so riding. This witness also testified that he went to see Chambers after the accident and had asked him how it happened, and that Chambers told him that he was doing just what he had told his boys not to do; riding on the footboard. The accident resulted in the death of Chambers. The Kirby Lumber Company contended that the testimony was conclusive that Chambers knew both the defect in the track and the danger. The Galveston Court of Civil Appeals denied this contention, saying: "In the state of the testimony, Chambers' mouth being closed, we cannot say that the jury was required to believe this testimony about the accident to Tucker [which was alleged to have happened at the same place shortly before the accident to Chambers, and which accident was stated to have been] under the eyes of Chambers, merely because no witness specifically denies it."

█ Appellant assigns that special issues Nos. 2, 4, 7, 8, and 9, are duplicitous. These assignments are overruled. Question No. 2 submitted the issue as to whether the relief valve was defective and failed to work on the occasion in question. Under all the testimony the valve was defective. The only controverted issue submitted by this question was whether or not it failed to work on the occasion inquired about. Question No. 4 submitted only one controverted issue; that is, whether or not appellant was guilty of negligence "in having and maintaining the ell in the charging line constructed of cast iron instead of malleable iron." It is true questions 7, 8, and 9 combined several different elements, submitting them conjunctively as constituting only one issue. These issues were submitted as pleaded by appellees, and as sustained by their proof. As we understand the authorities, this form of submission has direct approval by the Commission of Appeals. In Ft. Worth & R. G. Railway Co. v. Keith (Tex. Com. App.) 208 S. W. 891, 892, the complaint was made that one of the issues was duplicitous. Overruling that contention, the Commission of Appeals said: "We do not think the charge subject to the criticism urged. The several provisions of the charge must be construed in connection with the charge as a whole, and also in the light of the pleading. * * * The charge on this issue is substantially in the language of the plea. It is well established that where the facts * * * are pleaded conjunctively, no affirmative error will arise in submitting the issue in that form."

In Powell v. Rockow, 58 S.W.(2d) 536, 539 this court held as follows, citing as authority the Keith Case: "Different elements * * * were pleaded by appellees conjunctively as constituting the fraud upon which they sought rescission. As pleaded by them, the fraud consisted of the making of all the representations; that, conjunctively, the representations were false and, as pleaded, they were submitted to the jury. It thus appears that the several elements of this question were pleaded as constituting one issue and, therefore, it was not error to submit them conjunctively, as was done. Therefore, the form of the question was not reversible error. Ft. Worth & R. G. Railway Co. v. Keith (Tex. Com. App.) 208 S. W. 891."

See, also, Gulf, C. & S. F. Railway Co. v. Hill, 95 Tex. 629, 69 S. W. 136, 138; City of Abilene v. Moore (Tex. Civ. App.) 12 S.W.(2d) 604; San Antonio & A. P. Railway Co. v. Stuart (Tex. Civ. App.) 178 S. W. 17; Watson Co. v. Lone Star Service Station (Tex. Civ. App.) 16 S.W.(2d) 151; Davis v. Christensen (Tex. Civ. App.) 247 S. W. 303; Houston, E. & W. T. Railway Co. v. Hough (Tex. Civ. App.) 260 S. W. 233; Texas Electric Ry. v. Jones (Tex. Civ. App.) 262 S. W. 131; Continental Insurance Co. v. Nabors (Tex. Civ.

App.) 6 S.W.(2d) 151; Federal Surety Co. v. Smith (Tex. Com. App.) 41 S.W.(2d) 210.

The court did not commit error in refusing to charge the jury that "there can be more than one proximate cause of an injury"; in this case, the want of error is manifest because appellant does not even suggest wherein it was injured by this omission in the court's charge.

Question No. 5 submitted the issue of proximate cause based upon the defective relief valve and the cast-iron ell. These two issues were pleaded by appellees as constituting the proximate cause, and then submitted as pleaded. For the reasons just discussed above, this question is not duplicitous. Also, the issue was not improper as being upon the weight of the evidence; nor did it submit a proximate cause not tendered by the evidence. Question No. 5 was as follows: "Do you find from a preponderance of the evidence that the gross negligence (if any) of the defendant in having and maintaining the relief valve in the charging line and the ell in the charging line in the conditions they were (such as you have found from the evidence) was the direct and proximate cause of the origin of the said fire, and of the injury and death of the said Ira Burton Pope?"

The issue of proximate cause thus submitted was directly confined to the defects in the valve and in the ell, and the question, as worded, did not permit the jury to consider any other act of negligence as constituting proximate cause.

The issue of appellees' recovery was submitted by the following question: "What amount of money, if any, should the defendant pay to the plaintiffs, Mrs. Ersal Pope, the mother, and Ira Glendon Pope, the minor, as exemplary damages?"

As framed, this question did not constitute a general charge; nor did the court err in refusing to place "the burden of proof upon appellees" in connection with this issue. Appellant suggests: "The proper test and the proper issue which the court should have submitted was whether or not the jury found that the gross negligence of The Pure Oil Company, by and through one of its superior corporate officers, was such as should be fined or punished."

We see no material difference between the submission of this issue as made by the court and the submission suggested by appellant, except the claim "by and through one of its superior corporate officers," which it now concedes is not the law. Though all the essential elements for appellees' recovery, based on gross negligence, had been submitted to the jury and found in their favor, yet it would not necessarily follow that the jury was required to give appellees exemplary damages. Whether or not the jury would find any amount of exemplary damages rested exclusively in its discretion. Van Deventer v. Gulf Production Co. (Tex. Civ. App.) 41 S.W.(2d) 1029. The trial court properly defined exemplary damages and instructed the jury that in all cases it rested within its discretion whether or not to find such damages. The essential elements of exemplary damages were properly submitted on the issue of burden of proof.

The court did not err in refusing to submit to the jury the issue as to whether or not Bill Betterton, the still man in charge of still No. 7 and the adjacent stills, was guilty of negligence in allowing the fire to burn in the adjacent stills. Appellant requested the submission of this issue on the theory that Bill Betterton was the deceased's fellow servant. Betterton was not the deceased's fellow servant, but his superior with power, to a certain extent, to direct and control his action, even with power to prevent him from going upon the stills. Also the fact that the adjacent stills were in operation did not raise the issue of negligence against Betterton. There was no evidence that he had power to shut down the operation of the adjacent stills to aid in repairing the valve on still No. 7.

The court did not err in overruling appellant's plea for change of venue. The issue made by this plea was submitted to the court and its ruling thereon sustained by an overwhelming preponderance of the testimony.

The court correctly received evidence to the effect that the relief valve in the charging line had been defective for five or six years prior to the death of Pope; and that this condition had been called to the attention of the assistant superintendent and the head still man, and that they had refused to install a new valve.

All issues of contributory negligence predicated upon the condition of the charging line, that is, the defective valve and the cast-iron ell, were properly refused, because there was no evidence that the deceased knew of these defects or should or could have known of them. The testimony was that before Pope went upon still No. 7 it had been prepared in the usual manner for the repair of the valve in its vapor pipe. The jury found, and that finding has support in the evidence, that Pope and Ferguson secured the consent of the still man to go upon still No.

7 in order to repair the valve. On this showing all issues of contributory negligence, based upon the condition of the still, were properly refused. With the still properly repaired, there was no evidence that the deceased knew that it was an unsafe place for him to work, nor that it was an inherently dangerous place for him to work.

The court did not err in submitting the following definition of unavoidable accident: "An unavoidable accident exists where the injuries or damages are not proximately caused by any negligence on the part of either plaintiff or defendant; that is, as applied specifically to this case, if the injuries, and resulting death of the deceased, Pope, were not proximately caused by any negligence (if any) on his part, nor by any negligence (if any) on the part of the Pure Oil Company or its authorized agents, then and only in such event would Pope's death be caused by an unavoidable accident."

The wording of this charge does not bring it within the rule announced by Ferguson Seed Farms v. McMillan (Tex. Com. App.) 18 S.W.(2d) 595, 63 A. L. R. 1009, and Humble Oil & Refining Co. v. McLean (Tex. Com. App.) 280 S. W. 557.

There is no merit in the contention that the court refused to define the term "ordinary negligence." The court properly defined negligence, that is, ordinary negligence, in that it defined its elements, to wit, "ordinary care," as being "that degree of care that a person of ordinary prudence would use under the same or similar circumstances," and "negligence" as being the failure to use ordinary care. Gross negligence was defined as being "that entire want of care which raises a presumption of a conscientious indifference to consequences." The only difference between what the court did and what appellant claims it should have done was the failure to call negligence "ordinary negligence."

By the twenty-sixth and twenty-seventh propositions appellant complains that Mr. O. L. Smith, foreman of the jury, "testified" to the jury, while in deliberation, on the character of the ell as used in vapor pipe No. 7. Mr. Smith, while being examined as a juror, testified that he was an expert still man, which carried with it the clear statement that he was qualified to judge between the merits and the relative safety of the cast-iron ell and a malleable iron or steel ell. Appellees offered testimony that the cast-iron ell was not safe, and that the ell should be made of malleable iron or steel. The testimo-

ny before the jury was also to the effect that other large oil companies used malleable iron ells in their vapor pipes; under the testimony appellant was the only oil company within the knowledge of the witnesses, as far as they testified, that used cast-iron ells. We have carefully examined the testimony of the jurors on this issue as given by them in their examination on motion for new trial. As we understand Mr. Smith's testimony, he brought no new fact before the jury, but merely commented upon the testimony adduced. This testimony had to be weighed by the jury. Appellant knew that Mr. Smith was an expert when it accepted him as a juror, which fact the other members of the jury knew, and also that his comment on the testimony while the jury was in deliberation must necessarily be the comment of an expert. Again we say that his comment did not go beyond the testimony of the other experts who testified as witnesses on the trial of the case. It should also be said that the examination of the jury shows it did its best to try the case and to consider nothing but the testimony properly adduced; this conclusion follows because it appears from the record that, when some juror made an improper remark, his remark was challenged by the statement that the jury could consider only the testimony adduced on the trial. Propositions 26 and 27 are overruled.

What we have said disposes of all assignments and propositions presented by appellant in its original brief. After the Supreme Court handed down its opinion in Ft. Worth Elevators Co. v. Russell and the other authorities cited above on the issue of gross negligence, appellant filed in this court its supplemental brief, submitting for the first time what it designates in its supplemental brief as assignment of error No. 94, which, as submitted, is as follows: "Because the court erred, to the prejudice of the defendant, in overruling defendant's objections and exceptions to special issue No. 10 of the Court's charge, because the same fails to inquire of the jury the amount of actual damages suffered and because of the failure to give a definition of actual damages as more fully shown in defendant's objections and exceptions to special issue No. 10 of the court's charge, to which reference is here made as a part hereof."

Under this assignment appellant submits in its supplemental brief what it designates as proposition No. 45, as follows: "In a suit for exemplary damages, the jury should not only be asked whether the plaintiffs sustained actual damages, and be given a correct

definition thereof, but the jury must also be asked what amount of actual damages were sustained in order that it may be determined whether there was a reasonable proportion between the two."

This assignment of error and proposition come too late when submitted in the supplemental brief. After the original briefs were filed and answered by appellees, as we understand the rules of briefing and the authorities construing them, there is no authority in law authorizing us to consider this supplemental brief.

For this additional conclusive reason, even if considered, appellant's supplemental brief does not present error. Appellees plead their case originally, on the issue suggested by the supplemental brief, absolutely within the rule announced by the Supreme Court in the Russell and other cases cited above, wherein appellant's proposition is fully discussed. Appellant filed exceptions to these particular allegations of appellees' petition, and at its insistence these exceptions were sustained. Thereupon, appellees repleaded their case to comply with the ruling of the court, sustaining appellant's exceptions. As the case was tried on this issue exactly as appellant wanted it tried, it cannot now complain that the trial court erred in sustaining the exceptions urged by it; that this was appellant's theory of the law of the case is shown conclusively, not only by its exceptions, but also by the fact that, in its original brief, it made no suggestion of error in this particular respect. True, appellant excepted to the court's charge to the jury as reflected by this supplemental assignment of error; but, for the reasons stated, the exception was correctly overruled. The case was tried upon appellant's theory of the law, and, of course, it was estopped to urge this exception.

From what we have said it follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.

### On Rehearing.

We are not in conflict with our holding in Marshburn v. Stewart, 295 S. W. 679; nor was it our purpose "to change the law at this time relating to the filing of supplemental briefs," as appellant insists, in our holding in the original opinion herein wherein we say: "As we understand the rules of briefing and the authorities construing them, there is no authority in law authorizing us to consider this supplemental brief." Though appellees filed no formal motion to strike the sup-

plemental brief, they advanced against it the proposition that appellant was estopped to rely upon the assignment advanced therein on the ground that it "did not raise or present the issue in its original brief." Evidently appellees and the court both construed this proposition as sufficient to invoke rule No. 37, which reads as follows: "Briefs; Amendment of: The brief of either party may be amended by a citation of additional authorities if filed and notice be given counsel for opposite party one day before the case is called. No other amendment of the brief shall be allowed except by permission and under direction of the court."

The following authorities fully sustain our conclusion that the supplemental brief should not be considered: Glover v. Houston Belt & Terminal Railroad Co. (Tex. Civ. App.) 163 S. W. 1063; Houston Belt & Terminal Co. v. Glover, by Commission of Appeals, 213 S. W. 597; St. Louis Southwestern Railway Co. v. Texas Packing Co. (Tex. Civ. App.) 253 S. W. 864; Greene Gold-Silver Co. v. Silbert (Tex. Civ. App.) 158 S. W. 803; Tunnell v. Moore (Tex. Civ. App.) 53 S.W.(2d) 324.

For a second reason, Marshburn v. Stewart is not in point. In that case we had before us the issue of considering only certain new propositions; in the case at bar we have a new assignment of error, knowingly omitted from the original brief. It is the law beyond dispute that the assignments of error go to the very foundation of appellant's brief, and without assignments in his brief, or points of law partaking of the nature of assignments, the appellate court has no jurisdiction to consider the propositions of error. For a third reason, the new proposition in the supplemental brief does not constitute reversible error. In the Russell Case Judge Cureton said: "Moreover, the rule in this state is that the amount of exemplary damages allowed must be reasonably proportioned to the actual damages found." Of course, this proposition of law is to protect the defendant against an excessive verdict for exemplary damages. In their original brief appellants advanced the two following assignments of error on the issue of excessive damages:

"84. Because the verdict of twelve thousand dollars ($12,000.00) damages is without support in the evidence."

"86. Because the verdict of twelve thousand dollars ($12,000.00) damages is excessive."

Though appellant brought forward 44 propositions, no point was made that the verdict

was excessive, nor was the point made by independent argument supported by its statement from the record; therefore, it follows that assignments 84 and 86 were waived. If the verdict was not excessive, and appellant has not saved that point, the Russell Case has no application to this case.

But appellant says that appellees, by signing the following agreement, formally waived rule 37: "Now comes the appellant, Pure Oil Company, by and through its attorneys, and appellees, Mrs. Ersal Pope, et al, by and through their attorneys, and mutually agree to waive all statutory and other requirements relating to the filing of briefs by either party in the Court of Civil Appeals."

This agreement was filed after appellant had prepared and furnished counsel for appellees with copies of its original brief filed in this case. Appellees insist, and we agree with the contention, that the supplemental brief was not within the contemplation of the parties when this waiver was signed.

However, if the supplemental brief is properly before us, the assignment of error advanced therein does not constitute reversible error for the simple reason that appellant is estopped to assert it. In this connection it is proper to say that we are in error in our statement in the original opinion that appellant's exceptions to appellees' allegations of actual damages were sustained by the trial court. These exceptions were overruled by the trial court. After that ruling appellees filed an amended petition wherein every element of actual damages was pleaded by them in detail, but the amount of actual damages suffered by appellees was not stated in the petition. It is clear from the record that counsel for appellees filed this amended petition to obviate error by the order of the court in overruling appellant's special exceptions. This point was put in the case by appellant, not by appellees. That appellant acquiesced in this change in the pleadings and accepted it as the correct theory of the law upon which the case should be tried appears from the fact that in preparing its original brief it omitted the very assignment of error which constitutes the basis of the supplemental brief.

We cannot grant appellant's motion to file its supplemental brief because the omission of the new assignment from the original brief was not the result of fraud, accident, or mistake, nor even of carelessness on the part of appellant's counsel, but was due only to the fact that it did not believe this assignment presented a correct rule of law. Having tried the case on one theory of the law, the rule is universal that appellant cannot prosecute an appeal upon an entirely different theory of the law directly contra to the theory upon which the case was tried in the lower court.

Of the theory of estoppel discussed in the original opinion, appellant in its motion for rehearing says: "While, of course, if the trial court had sustained the exceptions of the appellant, and had held that it was improper to plead actual damages in such instance, then, of course, the appellant would be estopped to set up the failure of the Court to submit actual damages to the jury. The record shows, however, that this is not correct."

In principle this is a recognition of the principle of estoppel contended for by appellees. Appellant having induced appellees to change their petition by their exceptions, it stands in the same position on the issue of estoppel as if the trial court had sustained its exception. That is to say, the failure of appellees to plead the amount of their actual damages was directly occasioned by the act of appellant.

Though citing Marshburn v. Stewart as a principal authority in its motion for rehearing, appellant frankly concedes that it is not the law. Thus appellant, in its reply to appellees' reply to motion for rehearing, says: "Justice Walker, in Marshburn v. Stewart, incorrectly stated the law applicable to situations where the appellant has obtained no permission to file an amended brief, and where the appellees have objected to the same, but have failed to file their motion to strike, namely, that the Court is required to consider it."

If appellant is correct in its proposition that the court is not required to consider a supplemental brief where no motion to strike has been filed, then that concession should control this case. We know of no principle of equity requiring an appellate court to permit appellant to file a supplemental brief advancing a proposition knowingly and purposely omitted from the original brief.

We cannot agree with the contention that the assignment brought forward in the supplemental brief constitutes fundamental error. The error complained of by this assignment is procedural in its nature; the proposition involved being for the benefit of the defendant, as stated above, and was subject to waiver. Under the facts stated herein, it was waived.

By *its fourth ground for rehearing* appellant assigns error against our failure to sustain assignments of error Nos. 84 and 86, copied above, on the issue that the verdict was excessive. In the first place these assignments are too general to support error. In the second place, appellant advanced neither propositions nor argument nor statement in its original brief in their support. Therefore, they were properly overruled.

We have carefully considered all other points made by appellant in its motion for rehearing, and they are overruled.